# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: _____

| | |
|---|---|
| ALICE ROSENBLUM, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>PASSES, INC., a Delaware corporation, NOFHOTOS GROUP LLC, a California limited liability company, WLM MANAGEMENT LLC, a California limited liability company, LUCY GUO, an individual ALEC CELESTIN, an individual, and LANI GINOZA, an individual,<br><br>      Defendants. | **CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

Plaintiff Alice Rosenblum, an individual ("Plaintiff"), and the proposed class (the "Class"), by and through undersigned counsel, are victims who have had images and videos of them engaged in sexually explicit conduct made when they were under the age of 18 knowingly produced, possessed, sold and distributed by Defendants Passes, Inc., a Delaware corporation ("Passes"), Nofhotos Group LLC, a California limited liability company ("Nofhotos"), WLM Management LLC, a California limited liability company ("WLM"), Lucy Guo, an individual ("Guo"), Alec Celestin, an individual ("Celestin"), and Lani Ginoza, an individual ("Ginoza") (collectively, Passes, Nofhotos, WLM, Guo, Celestin and Ginoza are the "Defendants"), and for their complaint allege:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against the Defendants, who financially benefited from, or otherwise participated in, the production, possession, sale and distribution of child pornography; that is, images and videos of Plaintiff and the Class members, all of whom were under 18 years old at all times relevant, engaged in sexually explicit conduct.

2.      Each of the Defendants knew that Plaintiff was a minor and knew that they produced, possessed, sold and distributed images and videos of Plaintiff engaged in sexually explicit conduct at all times relevant.

3.      Starting in or around July 2024, the Defendants conspired to recruit and groom Plaintiff, a 17-year-old female minor, so that the Defendants could knowingly produce, market, sell and distribute child pornography; namely, the lascivious exhibition of the anus, genitals, or pubic area of herself, a minor, as defined under 18 U.S.C. §§ 2252, 2252A and 2256.

4.      Between July 2024 and September 2024, Guo personally intervened to override Passes' strict internal safety controls tailored for creators of social media content aged between 15 and 17 years old to strip and deprive Plaintiff of any protections offered by Passes against the exploitation of a minor.

5.      Between July 2024 and September 2024, Celestin and Ginoza, acting as agents for Passes and Guo, directed and induced Plaintiff, a then-17-year-old minor, to create images and videos of herself engaged in sexually explicit conduct and to upload them to the Passes data storage known as "the Vault" (the "Passes Vault").

6.      Between July 2024 and September 2024, Passes and Guo knew that Plaintiff, a then-minor, uploaded images and videos of herself engaged in sexually explicit conduct to the Passes Vault, but neither Passes nor Guo took any remedial action whatsoever.

7.      Between July 2024 and September 2024, Celestin and Ginoza, acting as agents for Passes and Guo, conspired to market, sell and distribute images and videos of Plaintiff engaged in sexually explicit conduct through the Passes internet messaging system to Passes customers, including those known as "big spenders" and "whales," in exchange for money.

8.      Passes and Guo knew that Celestin and Ginoza marketed, sold and distributed images and videos of Plaintiff engaged in sexually explicit conduct, but neither Passes nor Guo took any remedial action whatsoever.

9.      Passes presently possesses images and videos of Plaintiff and other Class members, all as then-minors, engaged in sexually explicit conduct in the Passes Vault.

10.     Passes presently possesses records and evidence of the distribution of child pornography in its direct messaging archives.

11.     Plaintiff seeks damages in an amount to be determined at trial, injunctive relief and declaratory judgments to remedy the Defendants' misconduct.

## PARTIES

12.     Plaintiff Alice Rosenblum is an individual who is now at the age of majority under Florida law and presently resides in Miami-Dade County, Florida.  She was a 17-year-old Creator[1] for Passes at all times relevant and is a victim of child pornography.

13.     Defendant Passes, Inc. is a Delaware corporation with its principal place of business at 1 South East 3rd Avenue, Suite 1440, Miami, Florida 33131.  Passes is a paywall platform designed to sell exclusive content, livestreams, one-on-one chats and personalized experiences with creators of content, including minors between the ages of 15 to 17 at all times relevant, to Passes customers and subscribers.

---

[1] *See ¶ 23 infra.*

14.     Defendant Nofhotos Group LLC is a California limited liability company with a principal place of business at 11911 Martha Ann Drive, Los Alamitos, California, 90720.  Nofhotos was created by Defendant Celestin and acted as an agent of Passes and Guo to recruit and direct creators on Passes to create content, including child pornography.  Nofhotos, as an agent of Passes and Guo, marketed and distributed the child pornography through the Passes direct messaging system and platform.

15.     Defendant WLM Management LLC is a California limited liability company with a principal place of business at 920 N. Kings Road, No. 125, West Hollywood, California 90069.  WLM, as an agent of Passes and Guo, recruited and directed creators on Passes to create content, including child pornography.  WLM, as an agent of Passes and Guo, marketed and distributed the child pornography through the Passes direct messaging system and platform.

16.     Defendant Lucy Guo is the founder and Chief Executive Officer of Passes.  She is a resident of Miami-Dade County, Florida at all times relevant.

17.     Defendant Alec Celestin is the founder of Nofhotos and is a resident of Los Angeles County, California.  He acted as an agent of Passes and Guo at all times relevant.

18.     Defendant Lani Ginoza was an assistant to Celestin at all times relevant and is a resident of Los Angeles County, California.  She acted as an agent of Passes, Guo and Celestin at all times relevant.  Ginoza had previously been the Passes Director of Talent responsible for talent relations and account management and reported directly to Guo.

19.     As alleged herein, WLM, Nofhotos, Celestin and Ginoza each acted within the course and scope of their authority from Passes and Guo at all times relevant and, as such, were each an agent acting with the permission, authorization, consent and ratification of Passes and Guo.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
1331 because this action arises under federal child pornography and sexual exploitation laws, 18
U.S.C. §§ 2252, 2252A and 2255, and supplemental jurisdiction over the related pendent state law
claims pursuant to 28 U.S.C. § 1367 because the state claims are related to the claims arising under
28 U.S.C. § 1331.

21.     This Court has personal jurisdiction over the Defendants pursuant to Rule 4 of the
Federal Rules of Civil Procedure.  This Court has personal jurisdiction over Defendants Passes
and Guo pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure because Passes has
its principal place of business in Miami-Dade County, Florida and Guo resided in Miami-Dade
County, Florida at all times relevant.  This Court has personal jurisdiction over all other Defendants
pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and Florida's long-arm statute
§ 48.193, Fla. Stat., because they maintain minimum contacts with Florida, such that maintenance
of this lawsuit does not offend traditional notions of fair play and substantial justice.  The
Defendants have purposefully availed themselves of this Court's jurisdiction.  Each of the
Defendant directs substantial business activity into this jurisdiction.  There is a substantial nexus
between Plaintiff's claims and the Defendants' activities.

22.     Venue in this Court is proper pursuant to 28 U.S.C.A. § 1391 because a substantial
part of the events or omissions giving rise to the claims asserted in this action occurred in this
District.  Furthermore, Passes maintains an office in this District, and Guo resided in this District
at all times relevant.

## BACKGROUND

**A.  *Guo Starts Passes as a "New" Content Subscription Platform.***

23.     "Creators" are social media figures and entrepreneurs who make content for various social media platforms, have many followers across the various social media platforms, and who monetize their social media presence through paid publicity.

24.     Fanfix is a content subscription platform that allows such Creators to monetize their social media content by providing their customers on Fanfix with exclusive content from the Creators on Fanfix and the ability to directly interact with the Fanfix Creators.

25.     On or about March 20, 2022, Fanfix hired Celestin as a Fanfix brand director.

26.     On or about April 27, 2022, Guo, a resident of Miami-Dade County, Florida, founded Passes and modeled it after Fanfix.

27.     To date, Passes has over 1,000 creators and more than 500,000 subscribers on its platform.

28.     At all times relevant, Passes, unlike other content subscription platforms, allowed creators between the ages of 15 and 17 to join Passes as Creators subject to stringent internal safeguards and controls in place at Passes for the protection of minors.

29.     In or around July 2023, Passes raised $9,000,000 in seed money with investments from Multicoin Capital, Florida Funders, Anti Fund founded by Jake Paul and Goeffrey Woo, Craft Ventures, Menlo Ventures and 11:11 Media founded by Paris Hilton and Bruce Gersh.

30.     Upon information and belief, prior to seed investments, Guo made presentations to these seed investors and other potential seed investors regarding the business plan, metrics, and, in relevant part, the stringent internal safeguards Passes tailored for the protection of Creators between the ages of 15 and 17.

6

31.     In or around February of 2024, Passes raised an additional $40,000,000 in Series A funding from investments from Bond Capital, Abstract Ventures, Crossbeam Ventures and other angel investors.

32.     Upon information and belief, prior to the aforementioned Series A investments Guo made presentations to these Series A investors and other potential Series A investors regarding the business plan, metrics and, in relevant part, the stringent internal safeguards Passes tailored for the protection of Creators between the ages of 15 and 17.

33.     On January 9, 2024, Fanfix sued Passes and others in *Fanfixapp LLC v. Passes, Inc., et al.*, 24SMCV00099, in Los Angeles County Superior Court for, *inter alia,* unfair business practices.  Among the core allegations, Fanfix claims that Guo and Celestin conspired to steal Fanfix confidential information to recruit Creators to Passes.

**B.   *Guo Adds Exclusive Opportunity for Minors to Join Passes as Creators.***

34.     Guo advertises Passes as the leading nonexplicit alternative to OnlyFans,[2] that is, a subscription-based content platform "minus the nudity."  Indeed, Passes falsely claimed and continues to falsely maintain that no nudity or sexual content is allowed on its platform.

35.     One of Passes' key differentiators from other content platforms is that Passes has a machine learning algorithm that reviews all content uploaded to the Passes platform to improve safety particularly for minors who are permitted to join Passes as Creators.  Guo has a background in artificial intelligence ("AI") as a former co-founder of an AI company.

36.     The Passes machine learning algorithm can and does identify images and videos of adults or minors engaged in sexually explicit conduct.

---

[2] OnlyFans is another subscription-based content platform that is notorious for facilitating OnlyFans creators to create, post and sell nude and sexually explicit content of adults to OnlyFans subscribers.

37.     At all times relevant, Passes expressly marketed to and allowed for Creators between 15 to 17 years old to join Passes which claims it "has more security measures in place to protect minors than any other social medial platform where kids can have accounts."

38.     Other platforms, like OnlyFans and Fanfix, do not and have never permitted individuals under 18 years old to register as either a user or a creator.

39.     In order for a Creator between 15 and 17 years old to join Passes, Passes requires "Verifiable Parent Consent" from a parent in the form of: (a) a signed consent form; (b) a video conference with a parent to verify; (c) a copy of the parent's identification or license; or (d) a successful knowledge-based challenge test for parents.

40.     Passes also implements stringent internal security measures to protect such minor Creators, including:

    a. The restriction against a minor Creator's receipt of direct messages from fans.
    b. Parental verification of the Creators' age and parental consent for posting.
    c. The use of multiple machine learning classifiers to review uploaded content before it can be posted.
    d. The automatic deactivation of a minor's Creator account and parental notification if a minor Creator uploads content including nudity.
    e. The scanning of all captions and texts sent by minor Creators for banned words.

41.     Passes sets forth policies in its Community and Content Guidelines ("Guidelines") for minors as well.  The Guidelines, in relevant part, state:

    a. "Do not use Passes in any way that may in effect or in intent [sic.] exploit or harm any person under 18 years old."
    b. Passes does "not allow explicit adult content, nudity, or pornography."
    c. Passes is "committed to protecting minors on Passes" and does "not tolerate acts that abuse, endanger, or exploit [] any person under the age of 18 (a 'minor')."
    d. Passes proscribes "grooming" that is when "an adult builds an emotional relationship with a minor in order to gain the minor's trust for purposes of future or ongoing sexual contact, sexual abuse, trafficking, or other exploitation."
    e. Passes disallows content of "nudity or sexual activity" involving minors "that is revealing of [the minor's] breasts, genitals, anus, or buttocks, or behaviors that mimic, imply or display sex acts involving minors."

42.     Passes guarantees that any identified image or video of a minor engaged in sexually explicit conduct, including nudity, will be immediately removed and reported to the National Center for Missing & Exploited Children and/or other relevant legal authorities.

43.     Upon information and belief, the option for minors between the ages of 15 and 17 to join Passes as Creators and these stringent internal safeguards for minors were disclosed to the investors in the seed investment round and in the Series A investment round.

44.     Guo, at her sole discretion, can and has overridden these stringent internal safety measures for minors on Passes, thereby stripping any meaningful advertised protection or safety for minor Creators on Passes, such as she did with Plaintiff.

45.     Upon information and belief, the investors for the seed investments and the Series A investments did not perform any meaningful due diligence on these stringent internal safeguards or Guo's unilateral ability to override them at her sole discretion.

46.     On or about February 24, 2025, Passes abruptly removed the option for minors between 15 and 17 years old to join as Creators.  Additionally, the aforementioned stringent internal safeguards for minor Creators has since vanished from the Passes Terms and Conditions and Guidelines.

### C.  *Guo Recruits Celestin as an Agent for Passes and Guo.*

47.     At around the time of the launch of Passes, Guo devised a plan to recruit creators from Fanfix to Passes.  In order to implement the plan, Guo hired Celestin, a self-styled "tech and entertainment disrupter," away from Fanfix, to enable her to steal creators from Fanfix.

48.     Guo also instructed Celestin to act as an agent on behalf of her and Passes to recruit Creators between the ages of 15 and 17, such as Plaintiff, to take advantage of Passes' exclusive offer to young content creators.

49.     Guo instructed Celestin to act as an agent on behalf of her and Passes to guide and help minor Creators between the ages of 15 and 17 create and upload any content for Passes.

50.     On August 14, 2023, Celestin, after Guo successfully recruited him, posted on a social media account a picture of him and Guo in front of a Passes billboard claiming "nofhotos group [handshake emoji] passes [/] World Domination [devil emoji]".



51.     On February 28, 2024, after Passes announced the $40,000,000 Series A fundraising, Celestin posted a picture of him and Guo stating: "$40,000,000 in the bank!! @joinpasses just got a lot more young hot rich & famous. Congrats @joinpasses team & @guoforit []".



52.      On January 5, 2025, Celestin posted "I fully [sic.] legally compliantly [sic.] sliced and diced the main competition to Passes which at the time was much larger than Passes. Built that private unicorn. Faced with lawsuits and them trying to ruin my life." In another post, Celestin boasted: "I've helped build a unicorn (private) @passes with @lucy_guo."





## FACTUAL ALLEGATIONS

### A.  Celestin Recruits and Grooms 17-Year-Old Plaintiff.

53.     Starting around May 2024, Celestin, acting as an agent of Passes and Guo, began to recruit and groom then-17-year-old Plaintiff to join Passes as a minor Creator and to create images and videos of her engaged in sexually explicit conduct.

54.     On or about June 4, 2024, Celestin wrote to Plaintiff that she needed to sign up on Passes because she would "most likely make 5-10x more than WideApp."  Plaintiff replied, "I am once I'm 18!!"  Plaintiff did not turn 18 years old until September 21, 2024.

55.     On or about August 10, 2024, Celestin wrote to Plaintiff "[] are you still thinking Passes once you're 18?!  I know it's coming up soon so just wanted to reach out to check in.  Also, noticed you're in LA! If you need a mansion to shoot at you're welcome to use mine."

56.     That same day, Celestin met Plaintiff at his residence in Los Angeles, California, to recruit her to join Passes as a minor Creator and to groom her to create images and videos of her engaged in sexually explicit conduct.

57.     His pitch was that she only needed to create pictures and videos of herself at their direction and upload them to Passes on a regular basis.  Celestin and his team, with access to her Passes profile, would then directly market and sell her content to Passes customers for payment.

58.     On that same day, Celestin took photographs of Plaintiff at his residence.  Those images were uploaded to the Passes Vault and later were published on Passes with salacious verbiage in connection with Plaintiff's 18th birthday campaign as explained below.

59.     Celestin then had Plaintiff electronically sign a management contract on August 10, 2024.  He did not provide her with an opportunity to review it or give her a copy.

60.     Subsequently, Plaintiff and Celestin entered into a second management contract between her and WLM two days later on August 12, 2024, and later into a third management contract replacing WLM with Nofhotos on December 24, 2024.

61.     The contract dated December 24, 2024 imposed usurious management fees on Plaintiff.

62.     Neither the contract dated August 10, 2024, nor the contract dated August 12, 2024 were signed by Plaintiff with the consent or approval of Plaintiff's parents or guardians.

63.     None of these contracts were for necessities, and Plaintiff has never been emancipated.

### B.  Guo Directly Overrides Passes' Stringent Safety Controls for Minor Creators.

64.     On or about August 10, 2024, Celestin started to help Plaintiff create a Creator profile for minors on Passes.  His initial onboarding efforts included taking a photo of Plaintiff's driver's license showing her date of birth and taking some profile pictures.

65.     Each of Passes' stringent internal safeguards for Creators between the ages of 15 and 17 were active and enforced by Passes at that time.

66.     Celestin knew that he had to normally would have to comply because (1) Plaintiff had told him repeatedly that she was, in fact, 17-years old and (2) he submitted a copy of her driver's license showing her actual birthday to Passes.

67.     Celestin, however, wanted to circumvent Passes stringent internal safety measures for minors so he could exploit Plaintiff and could do so with Guo's direct intervention.

68.     Celestin indeed assured Plaintiff that he could bypass the safety measures for minors because he "co-owned" Passes and would obtain the express approval of his "business partner Lucy."

69.     On or about August 10, 2024, while Plaintiff was still at Celestin's house, he called "his business partner Lucy" and then advised Plaintiff that "Lucy" had eliminated Passes' requirement for confirmation of parental consent for Plaintiff to become a minor Creator on Passes.

70.     The "business partner Lucy" whom Celestin called to waive the Passes parental consent requirement required by its Guidelines was Guo, and he told Guo that Plaintiff was a minor and needed the parent consent requirement waived.

71.     Celestin wanted to remove the parental verification requirement because he did not want Plaintiff's parents to know of his plans to create, sell and distribute images and videos of Plaintiff engaged in sexually explicit conduct.

72.     Guo, knowing that Plaintiff was a minor and of Celestin's plans, directly orchestrated the removal of the Passes verification of parental consent requirement.

73.     On or about August 13, 2024, three days later, Celestin completed creating Plaintiff's minor Creator account at Passes with no parental verification required by Passes or Guo.

74.     Celestin called Plaintiff and instructed her to announce her joining Passes as a Creator on her various social media platforms.

75.     Plaintiff, however, expressed unfamiliarity with the Passes application to Celestin. Celestin wrote that he "just messaged Passes CEO." Celestin then added Guo to the phone call to provide Plaintiff with specific guidance and instruction.

76.     Guo instructed Plaintiff, among other things, on how and where to upload content onto the Passes Vault system. Guo also told Plaintiff that "you can upload anything."

77.     Plaintiff also communicated with Ginoza, Celestin's assistant, to complete the Passes onboarding procedure. Ginoza, a former Passes director of talent who had previously reported directly to Guo, acted as an agent for Passes and Guo at all times relevant.

14

78.     On that day, Celestin and Ginoza also requested Guo to override the direct messaging ban for Plaintiff's minor Creator profile so that Celestin, Ginoza and others could utilize the direct messaging function in direct violation of the Passes strict internal restriction against allowing minor Creators to utilize the direct messaging function.

79.     Ginoza rationalized that she was "gonna try to get a clearance [for direct messaging] due to you being 18 in a month."

80.     Celestin and Ginoza wanted to enable the direct messaging function on Plaintiff's Passes profile so they and others could later pose as Plaintiff to exchange sexually overt messages with Passes subscribers, advertise and sell images and videos of Plaintiff engaged in sexually explicit conduct and distribute those images and videos over Passes direct messaging system.

81.     Guo, knowing that Plaintiff was a minor and of Celestin's plans, orchestrated the removal of the Passes strict internal rule against allowing Plaintiff's minor Creator profile on Passes to utilize the direct messaging system.

82.     On that same day, Plaintiff, acting at Celestin's direction, announced on her various social media platforms that she joined Passes as a Creator.

### C.  Celestin and Ginoza Direct Plaintiff to Produce Sexually Explicit Photos.

83.     After her social media announcement, Celestin and Ginoza, acting as agents of Passes and Guo, promptly directed the then-17-year-old Plaintiff to create new images and videos of her engaged in sexually explicit conduct.  Each defendant gave Plaintiff precise instructions on how to pose and model in sexually explicit ways.

84.     Between August 13, 2024 and September 21, 2024, Plaintiff, following their direction, took photos and videos of herself engaged in sexually explicit conduct and uploaded those images and videos of herself to a Passes Vault database assigned to her profile.

85.     Passes' proprietary machine learning classifiers reviewed each and every uploaded image and video of Plaintiff engaged in sexually explicit conduct and identified the images and videos as child pornography.  Neither Passes nor Guo took any remedial action whatsoever.

86.     Between August 13, 2024 and September 21, 2024, images and videos of Plaintiff, a minor, engaged in sexually explicit conduct were then marketed, sold and distributed by Passes' agents through the Passes direct messaging platform.

87.     Passes' proprietary machine learning classifiers reviewed each and every marketing and advertisement of Plaintiff's images and videos engaged in sexually explicit conduct and recognized the banned words and advertisements as marketing and advertisements for child pornography.  Neither Passes nor Guo took any remedial action whatsoever.

88.     Passes presently possesses records and evidence of the advertisement and distribution of the images and videos of Plaintiff, as a 17-year-old minor, engaged in sexually explicit conduct, in its direct messaging system or in its archived files.

89.     Between August 13, 2024 and September 21, 2024, Passes and Guo

    a.  never automatically deactivated Plaintiff's account;
    b.  never sent any parental notification to Plaintiff's parents;
    c.  permitted direct messaging from Plaintiff's minor Creator account;
    d.  did not deactivate the account; and
    e.  never notified the National Center for Missing & Exploited Children or any legal authorities of the images or videos of Plaintiff engaged in sexually explicit conduct,

in direct violation of Passes' stringent internal safety guidelines to protect minor Creators and despite knowledge by Passes and Guo from the multiple machine learning classifiers.

### D. *Passes Markets and Distributes Images and Videos of Plaintiff Engaged in Sexually Explicit Conduct to Passes Subscribers.*

90.     Celestin, Ginoza and other unidentified individuals aggressively marketed the images and videos of Plaintiff engaged in sexually explicit conduct with sexually charged advertising labels.

91.     For example, between August 13, 2024 and September 11, 2024, Celestin, Ginoza and others marketed these images or videos on Passes to subscribers as follows:

    a. August 13, 2024: three pictures of Plaintiff "**g-string booty pics**" marketed for $100.

    b. August 16, 2024: four pictures of Plaintiff "**Topless, g-string, +robe**" marketed for $200.

    c. August 16, 2024: a video of Plaintiff "**Pulling down bra tease +g-string show**" marketed for $100.

    d. August 16, 2024: a video of Plaintiff "**strip tesse [sic] +g-string booty**" marketed for $250.

    e. August 16, 2024: 3 pictures of Plaintiff "**arching in bed doggy**" marketed for $300.

    f. August 16, 2024: two pictures of Plaintiff "**Bra + thong legs spread**" marketed for $75.

    g. August 16, 2024: a picture of Plaintiff "**underboob + thong**" marketed for $69.

    h. August 18, 2024: 3 videos of Plaintiff "**booty jiggle/underboob vid**" marketed for $150.

    i. August 20, 2024: a video of Plaintiff "**Undressing**" marketed for $150.

    j. September 2, 2024: three pictures of Plaintiff "**leggings recoil + strip to thong**" marketed for $150.

    k. September 5, 2024: five pictures of Plaintiff "**black lingerie twerk**" marketed for $250.\

    l. September 11, 2024: a video of Plaintiff "**FLOOR (Rubbing lotion)**" marketed for $800.

    m. September 16, 2024: five pictures of Plaintiff "**red thong in mirror**" marketed for $75.

92.     On August 28, 2024, Plaintiff learned that an image of her vagina and her name that had been previously uploaded to the Passes Vault and sold and distributed to various Passes subscribers had been reposted on a platform called Thot BB in a post titled "Snapchat – NudeLeaksTeens – Alice Rosenblum."

93.     That day, Plaintiff expressed extreme distress to Ginoza about the reposted photo, and Ginoza replied "We'll try to get it down ASAP!! Thanks for flagging."

94.     On that same day, Plaintiff was summoned to the principal's office at her high school concerning claims of child pornography.  The aggressive marketing and widespread distribution of the images and videos of Plaintiff engaged in sexually explicit conduct had become so prevalent that they even reached her high school community.

95.     An emotionally devastated Plaintiff begged Celestin for help: "I'm not 18 yet so I don't really know what to do."  Celestin assured her "everything is fine …"  and that he would "have [his] team pause selling content til we all talk once I land."

96.     No Defendant ever paused the marketing or selling any image or video of Plaintiff engaged in sexually explicit conduct.

97.     On or about September 13, 2024, one of Passes' biggest "whales" ("Whale 1") for Plaintiff sent a direct message to Plaintiff over the Passes platform referencing a September 11, 2024 video titled "FLOOR (Rubbing lotion)" stating, "[I] can't stop thinking about your kitty and your lotioned ass so im risking being late to work so I can get a morning session."

98.     This video depicts Plaintiff exposing her buttocks and moving in a way that her bikini bottom exposes her genitalia, and the "kitty" references the visual depiction of Plaintiff's vagina.

99.     On or about September 15, 2024, Whale 1 again commented that he appreciated the "last batch of videos" and reiterated that he could see her vagina in the video.

100.    On or about September 18, 2024, Celestin and Ginoza instructed Plaintiff to create sexually explicit images and videos of her but to not upload them to Passes until her actual birthday. Plaintiff confirmed that, "[y]es I did already."

101.    On that same day, Celestin instructed Plaintiff: "U can send here [over iMessage]!" but then, knowing that would be receipt of child pornography, wrote "Oh one second . . . Yeah hold on that [sic.]".

102.    Passes Vault records also show that on October 15, 2024, images of Plaintiff engaged in sexually explicit conduct, taken when she was still 17 years old, were uploaded and advertised on Passes as "DM-SET of 6 - $3500 NUDE PICS SHOWER."

### E. Passes' Agents Distribute Images and Videos of Plaintiff Engaged in Sexually Explicit Conduct Directly to Passes Customers.

103.    In addition, agents of Passes, impersonating then-17-year-old Plaintiff on the Passes direct messaging system, engaged with so-called whales in sexually aggressive ways to bait the subscribers into purchasing images and videos of Plaintiff engaged in sexually explicit conduct at premium prices.

104.    The ability of these agents to exchange direct messages with so-called "big spenders" and "whales" were directly attributable to Guo's unilaterally overriding the Passes internal safety control against allowing the direct messaging function on Passes minor Creator accounts.

105.    Whale 1, for example, continually purchased Plaintiff's images for hefty fees, totaling over $47,000, through continuous and salacious direct messages between Whale 1 and Passes agents posing as Plaintiff.

106.    Some of the sexually explicit exchanges between "Alice" and Whale 1 and "Alice" and a second subscriber, "Whale 2," on the Passes messaging platform include:

  a.   September 17, 2024

  "Alice":      glad you made it home! hopefully, you can relax now after such a long day daddy 😊 and enjoy my content as well 😉

| Whale 1: | I am I already finished one session your teasing earlier had me on edge |

b.  September 20, 2024

| "Alice": | a tiny black bikini daddy prepared just for you 😉 |

| Whale 1: | Ah no last vid before bday thong action? 😂 I'm just teasing babe I'm gonna buy them soon still at work lol. |

| "Alice": | how about you let me win again daddy? It's a good way to end the streak at 5 right? 🥺🥺 |

| Whale 1: | Considering how horny I am right now your definitely going to |

c.  September 29, 2024

| Whale 2: | can I buy some custom content |

| "Alice": | yeah babe! what custom were you thinking of requesting |

| Whale 2: | baby oil, micro bikini (one of the ones ive seen you wear). doggystyle rocking band and forth live ppv's I bought.  lotta tongue action/licking lips. ass smacks?  then maybe some riding lower view |

107.    Passes' proprietary machine learning classifiers reviewed the aforementioned direct messages and identified these messages as banned words, but neither Passes nor Guo took any remedial action whatsoever.

### F.  The 18th Birthday Marketing Plan.

108.    On or about September 21, 2024, Plaintiff turned 18 years old.  Celestin devised an 18th birthday marketing campaign to capitalize on the voracious appetites of the "whales" and "big spenders" for new images and videos of Plaintiff engaged in sexually explicit conduct through Passes' unrestricted and unchecked platform.

109.    Celestin and Ginoza directed Plaintiff – while still a minor – to create new images and videos of her engaged in sexually explicit conduct with a birthday theme before her 18th

birthday.  Then, on her actual birthday, Celestin and others would market, sell and distribute the new child pornography.

110.   On or about September 16, 2024, Ginoza told Plaintiff to "do an icing / cake photoshoot" and sent Plaintiff an example of nude pictures of a female labeled "icing on nips." Later, Ginoza advised Plaintiff to follow "the birthday suit example set" and a "shower set."

111.   Plaintiff ultimately followed Ginoza's instructions and created and uploaded to the Passes Vault sets with the themes "birthday," with "icing on nips," and "in the shower."

112.   On or about September 18, 2024, Celestin sent Plaintiff a picture of a naked women as another example for a new photo for the 18th birthday themed marketing campaign.  Plaintiff again followed Celestin's instructions, took a variation of the photos and uploaded them to the Passes Vault.

113.   Ginoza also shared with Plaintiff the pricing strategies.  Ginoza would (a) "send them out as mass DM" through Passes for $500 but "exclude the big spenders who would spend $4k on them" or (b) "send out a text mass dm that says 'now that im 18 things are about to get wild, send me the 💦 emoji if you want to see what I mean'" and then price gauge based on "fans[']  spend".

114.   On or about September 21, 2024, Ginoza reminded Plaintiff to "upload the shower video when you get a chance," referring to a video that Plaintiff had made days earlier.  Ginoza told Plaintiff that she was going to try to sell it for $4,000 to Plaintiff's "biggest spender."

115.   As part of the birthday campaign, Passes also hosted a banner titled "Alice's Tip Menu" with a picture that Celestin had taken of the then-17-year old Plaintiff provocatively showing her buttocks.  Among items advertised to Passes customers were "sexting," "dick rating," "stripping vid," "booty bundle," and "nudes".



116.    The "stripping vid" and "nudes" were images and videos of Plaintiff, then 17 years old, engaged in sexually explicit conduct.

117.    On or about February 18, 2025, Passes unilaterally suspended Plaintiff's access to her Creator profile on Passes.  Similarly, on or about February 24, 2025, Passes abruptly removed the option for minors between 15 and 17 years old to join as Creators.

118.    The suspension of Plaintiff's Passes Account and the removal of minor Creators on Passes only happened after undersigned counsel contacted Passes' lawyers to alert them of the child pornography issue, although Guo and the others well knew the illegal activities detailed above.  Passes took no remedial action whatsoever before they were contacted by undersigned counsel.

## CAUSES OF ACTION

### COUNT I
### RECEIPT, DISTRIBUTION AND POSSESSION OF CHILD PORNOGRAPHY
### Violation of 18 U.S.C. §§ 2252 AND 2252A
### (Plaintiff and the Class Against All Defendants)

119.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

120.    The Defendants committed violations of 18 U.S.C. §§ 2252 and 2252A.

121.    Plaintiff and the Class members were minors and victims of violations of 18 USC § 2252 and suffered personal injury as a result of such violations and are eligible to sue and recover damages and other forms of relief under 18 U.S.C. § 2255.

122.    The Defendants knowingly received, possessed, advertised and distributed child pornography depicting Class members including Plaintiff.

123.    The Defendants' receipt, possession, advertisement and distribution of child pornography occurred in or affected interstate or foreign commerce.

124.    As a proximate result of the Defendants' violation of 18 U.S.C. § 2252A, Class members, including Plaintiff, suffered serious harm, including physical, psychological, financial and reputational harm.

125.    The Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights and the Class members' rights.  They are entitled to injunctive relief, compensatory and punitive damages, reasonable attorney's fees, preliminary and equitable relief as deemed appropriate and the costs of maintaining this action.  18 U.S.C. § 2255(a).

## COUNT II

## RECEIPT, DISTRIBUTION AND POSSESSION OF CHILD PORNOGRAPHY
### Violation of Fla. Stat. 847.012
### (Plaintiff and the Class Against All Defendants)

126.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

127.    The Defendants committed violations of Section  847.012 of the Florida Statutes.

128.    Plaintiff and the Class members were minors and victims of violations of Section § 847.012 of the Florida Statutes and suffered personal injury as a result of such violations and are eligible to sue and recover damages and other forms of relief under Section § 847.01357 of the Florida Statutes.

129.    Plaintiff turned 18 years old on September 21, 2024, and therefore this civil action is brought within three (3) years after Plaintiff reached the age of 18 years old.  There has been no criminal prosecution of these allegations, and no law enforcement notification has been given to Plaintiff.

130.    The Defendants knowingly used a minor in the receipt, possession and distribution of child pornography depicting Class members including Plaintiff.

131.    As a proximate result of the Defendants' violation of Fla. Stat. 847.012, Class members, including Plaintiff, suffered serious harm, including physical, psychological, financial and reputational harm.

132.    The Defendants' conduct was malicious, oppressive, or in reckless disregard of Plaintiffs' rights and Class members' rights. They are entitled to injunctive relief, compensatory and punitive damages, reasonable attorney's fees, preliminary and equitable relief as deemed appropriate, and the costs of maintaining this action.

## COUNT III

## TRANSMISSION OF MATERIAL HARMFUL TO MINORS
### Violation of Fla. Stat. 847.0138
### (Plaintiff Against Defendants Celestin and Ginoza)

133.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

134.    The Defendants committed violations of Section 847.0138 of the Florida Statutes.

135.    Plaintiff and the Class members were minors and victims of violations of Section § 847.0138 of the Florida Statutes and suffered personal injury as a result of such violations and are eligible to sue and recover damages and other forms of relief under Fla. Stat. 847.01357.

136.    The Defendants Celestin and Ginoza knowingly transmitted material harmful to minors; namely images of nudity, sexual conduct and sexual excitement, by electronic device to Plaintiff, a minor.

137.    As a proximate result of the Defendants' violation of Fla. Stat. 847.0138, Plaintiff suffered serious harm, including physical, psychological, financial and reputational harm.

138.    Defendants Celestin and Ginoza's conduct was malicious, oppressive or in reckless disregard of Plaintiffs' rights.  Plaintiff is entitled to injunctive relief, compensatory and punitive damages, reasonable attorney's fees, preliminary and equitable relief as deemed appropriate and the costs of maintaining this action.

## COUNT IV
## DECLARATORY JUDGMENT
### (Plaintiff Against Defendant Celestin)

139.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

140.    In accordance with 28 U.S.C. § 2201, an actual controversy exists between Plaintiff and Celestin regarding Plaintiff's contractual obligations entered into between Plaintiff, a minor, and Celestin on August 10, 2024.

141.    Under Florida law, a person under 18 years old in Florida has the disability of nonage and is presumed to lack the mental capacity to enter into a binding contract except (a) when a parent or guardian approves; (b) for necessities such as food or lodging; or (c) if the minor has been emancipated.  § 743, Fla. Stat.

142.    Plaintiff seeks, and is entitled to a declaration that the contract dated August 10, 2024 is null and void, and unenforceable by Celestin.

## COUNT V
## DECLARATORY JUDGMENT
### (Plaintiff Against Defendants WLM and Celestin)

143.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

144.    In accordance with 28 U.S.C. § 2201, an actual controversy exists between Plaintiff, and WLM and Celestin, regarding Plaintiff's contractual obligations entered into between Plaintiff, a minor, and WLM and Celestin on August 12, 2024.

145.    Under Florida law, a person under 18 years old in Florida has the disability of nonage and is presumed to lack the mental capacity to enter into a binding contract except (a) when

a parent or guardian approves; (b) for necessities such as food, lodging and food; or (c) if the minor has been emancipated.  § 743, Fla. Stat.

146.    Plaintiff seeks and is entitled to a declaration that the contract between WLM and Plaintiff dated August 12, 2024 is null and void and unenforceable by WLM and Celestin.

## COUNT VI
## DECLARATORY JUDGMENT
### (Plaintiff Against Defendants Nofhotos and Celestin)

147.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

148.    In accordance with 28 U.S.C. § 2201, an actual controversy exists between Plaintiff and Nofhotos and Celestin regarding Plaintiff's contractual obligations entered into between Plaintiff, a minor, and Nofhotos and Celestin on December 24, 2024.

149.    The contractual obligations involved Plaintiff producing child pornography, in violation of federal and state law.  Any contract that violates federal or state law is unenforceable.

150.    The contract dated December 24, 2024 is unenforceable because the management fee commission is usurious and unconscionable.

151.    Plaintiff seeks and is entitled to a declaration that the contract between Nofhotos and Plaintiff dated December 24, 2024 is null and void and unenforceable by Nofhotos and Celestin.

## CLASS ACTION ALLEGATIONS

152.     Plaintiff Alice Rosenblum brings this action under the Federal Rule of Civil

Procedure 23(b)(2), (b)(3), and 23(c)(4), on behalf of herself and the following Class:

> All persons who were under 18 years of age at the time they were depicted in a video or
> image of any child pornography as defined under 18 U.S.C. § 2252A, that has been
> possessed by Defendants or distributed to Passes subscribers by Defendants.

153.     Plaintiff reserves the right to seek leave to modify this definition, including the

addition of one or more subclasses, after having had the opportunity to conduct discovery.

154.     <u>Numerosity</u>: The Class consists of numerous people, making joinder impracticable,

in satisfaction of Fed. R. Civ. P. r. 23(a)(1).  The exact size of the Class and the identities of the

individual members of the Class cannot be known.  Passes has at least 1,000 creators and allowed

minors between 15 and 17 years old to join as Creators between April 27, 2022 and February 24,

2025 establishing the numerosity requirement.

155.     <u>Typicality</u>: Plaintiff's claim is typical of the claims of the other members of the

Class that she seeks to represent. The claims of Plaintiff and the other members of the Class are

based on the same legal theories and arise from the same unlawful pattern and practice of

Defendants.  Plaintiff, like all members of the Class, was victimized by Defendants profiting from

images and videos of child pornography of Plaintiff which Defendants knew, or should have

known, were made while they were minors.

156.     <u>Commonality</u>: There are many questions of law and fact common to the claims of

Plaintiff and the other members of the Class, and those questions predominate over any questions

that may affect only individual members of the Class, within the meaning of Fed. R. Civ. P. r.

23(a)(2).  Additionally, class treatment of common issues under Fed. R. Civ. P. r. 23(c)(4) will

materially advance the litigation. Common questions of fact and law affecting members of the

Class include, but are not limited to, the following:

    a. Whether images or videos of child pornography appear on Passes' platforms;
    b. Whether Defendants profited from child pornography appearing on Passes' platforms;
    c. Whether Passes internal controls were adequate to stop child pornography from appearing on Passes platforms;
    d. Whether Passes knew or should have known child pornography was on Passes' platforms; and
    e. The scope of injunctive relief and damages to which Plaintiff and members of the Class are entitled.

## JURY TRIAL DEMAND

157.    Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

158.    WHEREFORE, Plaintiff prays for judgment against Defendants on all claims, and

requests a judgment providing the following relief:

    a. Judgment in Plaintiff's favor and against Defendants on all causes of actions;

    b. Certify the proposed class pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), (b)(3) and (c)(4);

    c. Designate Plaintiff as the representative of the proposed Class and Plaintiff's counsel as counsel for the Class;

    d. Enter an order declaring that the following contracts are null and void:

        i. The contract between Celestin and Plaintiff dated August 10, 2024;

        ii. The contract between WLM and Celestin and Plaintiff dated August 12, 2024; and

        iii. The contract between Nofhotos and Celestin and Plaintiff dated December 24, 2024.

e.   For injunctive or any other equitable relief to Plaintiff, requiring the Defendants to identify and remove all child pornography—related or not to Plaintiff—and implement corporate-wide policies and practices to prevent continued dissemination of child pornography or child sex trafficking;

f.   For compensatory damages in an amount to be proven at trial;

g.   For punitive damages and exemplary damages according to proof at trial;

h.   For restitution and disgorgement of all profits and unjust enrichment obtained as a result of Defendants' unlawful conduct;

i.   For costs of suit incurred herein;

j.   For attorney's fees and costs, including as warranted by applicable laws; and

k.   For such other and further relief as the Court may deem to be just and proper.

[ATTORNEY SIGNATURES ON FOLLOWING PAGE]

Dated: February 26, 2025
      Miami, Florida

SCHWARTZ BRESLIN PLLC

By: */s/ Jonathan Noah Schwartz, Esq*
Jonathan Noah Schwartz, Esq.
  Florida Bar. No. 1014596
Jerry Breslin, Esq.
  Florida Bar No. 269573

The Alfred I. DuPont Building
169 E. Flagler Street, Suite 700
Miami, Florida 33131
(305) 577-4626
JS@JSJB.Law; JB@JSJB.Law; Eservice@JSJB.Law

CLARK SMITH VILLAZOR LLP

Christopher J. Clark, Esq.
  clark@csvllp.com
Rodney Villazor, Esq.
  rodney.villazor@csvllp.com
Natalia Lima, Esq.
  natalia.lima@csvllp.com
*Pro Hac Vice Motions
 to be Filed Contemporaneously*

666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0850

*Attorneys for Plaintiff*