# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ALICE ROSENBLUM,
on behalf of herself and all others similarly
situated,

               Plaintiff,

     v.

PASSES, INC., NOFHOTOS GROUP LLC,
WLM MANAGEMENT LLC, LUCY GUO,
ALEC CELESTIN, and LANI GINOZA,

           Defendants.

Civ. Action No. 1:25-cv-20899-JEM

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS PASSES, INC. AND LUCY GUO'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
## TO STRIKE THE COMPLAINT'S CLASS ACTION ALLEGATIONS

Date:  April 28, 2025

Rollo C. Baker, IV (*pro hac vice* forthcoming)
Vivek Tata (*pro hac vice* forthcoming)
Alexander S. Davis (*pro hac vice* forthcoming)
Chase J. Shelton (*pro hac vice* forthcoming)
Elsberg Baker & Maruri PLLC
1 Penn Plaza Suite 4015
New York, NY 10019
Tel: 917-923-2401
rbaker@elsberglaw.com
vtata@elsberglaw.com
adavis@elsberglaw.com
cshelton@elsberglaw.com

Brian W. Toth
Freddy Funes
Toth Funes PA
25 Southeast Second Avenue Suite 805
Miami, Florida 33131
Tel: 305-717-7851
btoth@tothfunes.com
ffunes@tothfunes.com

*Counsel for Passes, Inc. and Lucy Guo*

## **TABLE OF CONTENTS**

*Pages*

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF ALLEGATIONS ...........................................................................................4

    A.    The Parties .....................................................................................................4

    B.    The Complaint's Allegations ........................................................................6

ARGUMENT ..............................................................................................................................8

I.    This Case Must Be Dismissed, or, in the Alternative, Transferred Because Venue Does Not Lie in the Southern District of Florida ................................................................8

II.    The Passes Defendants Are Immune from Liability Under Section 230 ..........................10

    A.    The Passes Defendants Are Providers of Interactive Computer Services ............11

    B.    The Passes Defendants Did Not Create or Develop the Material .........................12

    C.    The Passes Defendants Are Not the "Publishers or Speakers" of the Material .................................................................................................................14

    D.    The Complaint Fails to Allege that Passes Can Be Held Vicariously Liable for the Actions of Celestin and Ginoza .................................................................14

III.    The Complaint Fails to State a Claim Against the Passes Defendants .............................16

    A.    The Complaint Fails to Plausibly Allege the Passes Defendants Knowingly Received or Distributed the Material ..................................................17

    B.    The Complaint Fails to Allege the Passes Defendants Produced the Material .................................................................................................................18

IV.    The Class Action Allegations Should Be Stricken, or, Alternatively, Dismissed ............19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ............................................................................. 3, 10

*Amstar Ins. Co. v. Cadet*,
    862 So. 2d 736 (Fla. Dist. Ct. App. 2003) ...................................................... 15

*Borgese v. Baby Brezza Enters. LLC*,
    2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) .................................................. 20

*Bretifeller v. Playboy Ent. Grp.*,
    2005 WL 2088418 (M.D. Fla. Aug. 30, 2005) ............................................. 17

*Calise v. Meta Platforms, Inc.*,
    103 F.4th 732 (9th Cir. 2024) ...................................................................... 3, 12

*Coffee v. Google, LLC*,
    2021 WL 493387 (N.D. Cal. Feb. 10, 2021) .................................................. 12

*Doe #1 v. MG Freesites, Ltd.*,
    676 F. Supp. 3d 1136 (N.D. Ala. 2022) .................................................... 11, 18

*Doe #1 v. Twitter, Inc.*,
    2023 WL 3220912 (9th Cir. May 3, 2023) .................................................... 11

*Doe (K.B.) v. Backpage.com, LLC*,
    2025 WL 719080 (N.D. Cal. Mar. 3, 2025) .................................................. 13

*Doe v. Fenix Int'l, Ltd.*,
    2025 WL 336741 (S.D. Fla. Jan. 30, 2025) ................................................ 3, 18

*Doe v. Fry*,
    2012 WL 13102263 (M.D. Fla. Apr. 9, 2012) .......................................... 17-18

*Doe v. Grindr Inc.*,
    709 F. Supp. 3d 1047 (C.D. Cal. 2023) ........................................................ 14

*Doe v. Kik Interactive, Inc.*,
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................................................... 10, 11

*Doe v. Reddit, Inc.*,
    2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) .................................................. 13

*Doe v. WebGroup Czech Republic, a.s.*,
   2024 WL 3533426 (C.D. Cal. July 24, 2024) ................................................................ 17

*Dryoff v. Ultimate Software Grp.*,
   934 F.3d 1093 (9th Cir. 2019) ........................................................................................ 14

*Elson v. Black*,
   56 F.4th 1002 (5th Cir. 2023) ........................................................................................ 19

*Fields v. Twitter, Inc.*,
   200 F. Supp. 3d 964 (N.D. Cal. 2016) ............................................................................ 13

*Flowers Indus., Inc. v. FTC*,
   835 F.2d 775 (11th Cir. 1987) .......................................................................................... 9

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) .............................................................................................. 11

*Green v. Duffy*,
   2022 WL 3279543 (S.D. Fla. Aug. 11, 2022) ................................................................ 10

*Hayes v. Bank of N.Y. Mellon*,
   2014 WL 3887922 (N.D. Ga. Aug. 6, 2014) .............................................................. 14-15

*Hemispherx Biopharma, Inc. v. MidSouth Cap., Inc.*,
   669 F. Supp. 2d 1353 (S.D. Fla. 2009) .......................................................................... 10

*Herrick v. Grindr LLC*,
   765 F. App'x 586 (2d Cir. 2019) .............................................................................. 12, 14

*Hyde v. Bowman*,
   2024 WL 2796506 (11th Cir. 2024) ................................................................................ 17

*Igbonwa v. Facebook, Inc.*,
   2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) .................................................................. 12

*Island Sky Corp. v. Hertz*,
   2020 WL 13261141 (S.D. Fla. Feb. 11, 2020) ................................................................ 9

*Ivanov v. Sobel*,
   654 So. 2d 991 (Fla. Dist. Ct. App. 1995) ...................................................................... 16

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
   224 So. 3d 316 (Fla. Dist. Ct. App. 2017) ................................................................ 15, 16

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016) ............................................................................................ 11

iii

*Kaplan v. Coldwell Banker Residential Affiliates, Inc.*,
  59 Cal. App. 4th 741 (1997) ........................................................... 15, 16

*Kennedy v. Gope Hotel Enters.*,
  2019 WL 13260529 (S.D. Fla. May 28, 2019) ................................................. 9

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ................................................... 11, 12

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) ........................................................ 11

*L.H. v. Marriott Int'l, Inc.*,
  604 F. Supp. 3d 1346 (S.D. Fla. 2022) ................................................. 11, 12

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017) ................................................. 11

*Lawson v. Life of the S. Ins. Co.*,
  286 F.R.D. 689 (M.D. Ga. 2012) ........................................................ 19

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Cir. 2021) ........................................................ 11

*Lloyd v. Facebook, Inc.*,
  2024 WL 5121035 (N.D. Cal. Dec. 16, 2024) ................................................. 13

*Loomer v. Zuckerberg*,
  2023 WL 6464133 (N.D. Cal. Sept. 30, 2023) ................................................. 12

*M.H. ex rel. C.H. v. Omegle.com LLC*,
  122 F.4th 1266 (11th Cir. 2024) ................................................... 17, 18

*M.H. ex rel. C.H. v. Omegle.com, LLC*,
  2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ........................................... 11, 12, 13

*Majesko v. Nationwide Mut. Ins. Co.*,
  736 F. App'x 240 (11th Cir. 2018) ........................................................ 4

*Mills v. Foremost Ins. Co.*,
  511 F.3d 1300 (11th Cir. 2008) ........................................................ 19

*PFT of Am., Inc. v. Tradewell, Inc.*,
  1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ................................................. 20

*Robey v. JPMorgan Chase Bank, N.A.*,
  343 F. Supp. 3d 1304 (S.D. Fla. 2018) ........................................................ 8

*Saunders v. BellSouth Advert. & Pub. Corp.*,
   1998 WL 1051961 (S.D. Fla. Nov. 10, 1998) ................................................................ 20

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) .......................................................................... 11

*Smith v. Carnival Corp. & PLC*,
   2022 WL 16791783 (S.D. Fla. Nov. 8, 2022) ................................................................ 14

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 4723366 (N.D. Cal. Dec. 4, 2009) .................................................................. 19

*Sterling Wholesale, LLC v. Travelers Indem. Co. of Conn.*,
   2012 WL 1991456 (S.D. Fla. May 29, 2012) .................................................................... 9

*Taco Bell of Cal. v. Zappone*,
   324 So. 2d 121 (Fla. Dist. Ct. App. 1975) ...................................................................... 16

*TMJ Prac. Mgmt. Assocs. v. Curran*,
   2017 WL 3130421 (S.D. Fla. July 24, 2017) .................................................................. 10

*Turrieta v. Lyft, Inc.*,
   16 Cal. 5th 664 (2024) .................................................................................................... 15

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994) .......................................................................................................... 17

*Vandenbrink v. State Farm Mut. Auto. Ins. Co.*,
   2012 WL 3156596 (M.D. Fla. Aug. 3, 2012) ....................................................... 4, 19, 20

*Wai v. Rainbow Holdings*,
   315 F. Supp. 2d 1261 (S.D. Fla. 2004) ............................................................................. 5

*Wiersum v. U.S. Bank, N.A.*,
   785 F.3d 483 (11th Cir. 2015) .......................................................................................... 4

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) .......................................................................................... 14

*Zhang v. Twitter Inc.*,
   2023 WL 3919546 (N.D. Cal. June 8, 2023) .................................................................. 11

## **Statutes**

18 U.S.C. §2252 ......................................................................................................... *passim*

18 U.S.C. § 2252A ...................................................................................................... *passim*

18 U.S.C. § 2255 ................................................................................................................ 8

28 U.S.C. § 1391 ............................................................................................................. 2, 8

28 U.S.C. § 1406 ......................................................................................................... 2, 8, 10

47 U.S.C. § 230 ........................................................................................................... *passim*

Fla. Stat. § 847.012 ..................................................................................................... *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 3, 10, 19

Fed. R. Civ. P. 12(f) ......................................................................................................... 19

Fed. R. Civ. P. 23 ......................................................................................................... 19, 20

## PRELIMINARY STATEMENT

The Complaint contains disturbing allegations related to the conduct of Defendants Alec Celestin and Lani Ginoza, claiming to recount the solicitation and exploitation of a seventeen-year-old minor plaintiff at the hands of her former managers.  But those allegations stand in stark contrast to the absence of any such allegations against Defendants Passes, Inc. and its founder and CEO Lucy Guo (together, the "Passes Defendants").  The Complaint does not (and cannot) allege that the Passes Defendants solicited Plaintiff to post explicit content on Passes, does not (and cannot) allege that they ran her account, and does not (and cannot) allege that they knew Defendants Celestin and Ginoza were uploading the material described in the Complaint (the "Material") or encouraged Plaintiff to post allegedly explicit content on her Passes account.  And the Complaint does not (and cannot) allege that the Passes Defendants had any financial motive for, or that they benefited at all from, Celestin and Ginoza allegedly posting the Material on Passes.

Instead, the allegations against the Passes Defendants are a transparent attempt by Plaintiff's counsel to pursue the "deep pockets" of Passes, a successful startup, and its wealthy founder.  In fact, prior to filing the Complaint, Plaintiff's counsel—who formerly represented Guo—reached out to Passes and threatened to drag Passes into this litigation if the Passes Defendants did not pay $15 million.  The Complaint only speculates that Guo granted exceptions to some of Passes' internal limitations for Plaintiff, allowing her to subscribe to Passes and to send messages to subscribers.  But even if this were true, allegedly allowing a seventeen-year-old to access a chat service—itself perfectly legal and content neutral—is a far cry from "knowingly" receiving or distributing Child Sex Abuse Material ("CSAM") as is required to state a claim under 18 U.S.C. §§ 2252 and 2252A and Fla. Stat. § 847.012.  Indeed, as the Complaint concedes, immediately upon being alerted to alleged improper material on Passes, the Company suspended Plaintiff's account.  Compl. ¶¶ 41, 117-18.  Although it is entirely legal for minors to be creators,

Passes has removed all minor creators from the platform and prohibits minor creators from joining Passes. *Id.* ¶ 117.

The assumption underlying the Complaint's claims against the Passes Defendants—that they would jeopardize the Company's success by knowingly allowing the Material to be posted on Passes—is absurd. Passes is a unique, subscription-based platform designed for popular creators to sell exclusive content to their fans. It has always distinguished itself from other subscription-based content platforms by being a completely safe-for-work platform. Passes strictly prohibits creators from posting any explicit content, including nudity or pornography, and it uses three comprehensive, industry-leading third-party content moderation systems to ensure its creators do not post explicit content. The conduct alleged in the Complaint goes against everything Passes stands for. While Plaintiff may have claims against Defendants Celestin and Ginoza, there is no basis for the Passes Defendants to be a part of this lawsuit. Should the case proceed beyond the motion to dismiss stage against the Passes Defendants (and it should not), any assertion or implication that the Passes Defendants were involved in any wrongdoing will be shown to be totally and utterly false.

This Court should dismiss the Complaint for the following, independent reasons.

*First*, Plaintiff has not met, and cannot meet, her threshold burden of demonstrating that venue is proper in the Southern District of Florida. At the time of filing, all Defendants were (and still are) residents of Los Angeles County, California, and Plaintiff does not allege that a single act, much less that a "substantial part of the events . . . giving rise to [her] claim," occurred in this District. 28 U.S.C. § 1391(b). Because venue does not lie in this District, this Court must dismiss the Complaint, or, in the alternative, transfer it to the district in which venue is proper—the Central District of California. 28 U.S.C. § 1406(a).

*Second*, if the Court does not dismiss or transfer the case for improper venue, it should dismiss under Rule 12(b)(6) because the Passes Defendants are immune from liability under Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230"). Section 230 grants providers of "interactive computer service[s]" such as the Passes Defendants "broad federal immunity" against "any cause of action that would make service providers liable for information originating with a third-party user of the service." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). Courts regularly hold that interactive computer service providers are immune from claims about the existence of illegal content on the service where the service merely provided "neutral tools" such as direct messaging services, even if those tools "can be manipulated by third parties for unlawful purposes." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 745 (9th Cir. 2024); *accord Doe v. Fenix Int'l, Ltd.*, 2025 WL 336741, at *5 (S.D. Fla. Jan. 30, 2025). And while the Complaint gestures vaguely at an agency theory to try to make the Passes Defendants liable for Celestin and Ginoza's alleged conduct, the Complaint fails to plead a theory of vicarious liability, any agreement between the Passes Defendants and Celestin or Ginoza to allegedly solicit or exploit Plaintiff, or any representation by the Passes Defendants that Celestin and Ginoza were acting on their behalf. To the contrary, the Complaint alleges that Celestin and Ginoza took advantage of Plaintiff in their role as her agents.

*Third*, even if the Passes Defendants were not protected by Section 230 immunity (and they are), the Complaint fails to plausibly allege that the Passes Defendants violated 18 U.S.C. §§ 2252 and 2252A because it does not, and could not, allege facts that would show the Passes Defendants "***knowingly***" received or distributed the Material or accessed the Material ***knowing*** that it was CSAM. 18 U.S.C. §§ 2252, 2252A. And as to Fla. Stat. § 847.012, Plaintiff must, and does not, allege that the Passes Defendants "knowingly use[d]" Plaintiff "in the production" of explicit

materials.  Fla. Stat. § 847.012(4).  The Complaint does not (and cannot) allege any involvement in the production of the Material by the Passes Defendants whatsoever.

*Finally*, if the Court does not dismiss the Complaint, it should strike the Complaint's class action allegations.  Courts may strike (or dismiss) class allegations where, as here, "the propriety of the class action . . . is plain from the initial pleadings." *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012).  The Complaint's allegations about Celestin and Ginoza's solicitation of Plaintiff and marketing of the Material are inherently specific to Plaintiff.  And the Complaint offers only conclusory allegations that there are other allegedly similar claimants—in direct contradiction to the allegations that Celestin "circumvent[ed]" Passes' "stringent internal safeguards" that "normally" would apply to Plaintiff as a minor in order to post the Material on Passes.  Compl. ¶¶ 65-67.  Plaintiff's claims are plainly not capable of class-wide treatment, and the class action allegations should be stricken or, alternatively, dismissed.

## STATEMENT OF ALLEGATIONS[1]

### A.      The Parties

Passes is a subscription-based content platform founded in April 2022 that allows content creators to monetize their fanbase by selling exclusive, high-quality content to their fans.  Since its inception, Passes has differentiated itself from adult platforms, such as OnlyFans and Fanfix, by prohibiting creators from posting any explicit content, including pornography.  Indeed, Passes has Guidelines that prohibit any adult content, nudity, or pornography, uses robust content moderation technologies, and, unlike other platforms that market themselves as free of explicit content, rigorously enforces the Guidelines.  Compl. ¶ 41.  Passes is designed for influencers and

---

[1] For purposes of this Motion, only Plaintiff's "well-pleaded" allegations are accepted as true. *Majesko v. Nationwide Mut. Ins. Co.*, 736 F. App'x 240, 241 (11th Cir. 2018) (per curiam).  The court need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015).

4

celebrities to give loyal fans behind-the-scenes access with exclusive photos and videos that are not available on other platforms.  The Company is incorporated in Delaware and headquartered in Los Angeles, California.  Compl. ¶¶ 13; Guo Decl. ¶ 5.[2]

To ensure its users follow its Guidelines, Passes uses three third-party "machine learning algorithm[s]" to review "all content uploaded to the Passes platform."  Compl. ¶¶ 35.  The algorithms "improve safety particularly for minors" by "identify[ing] images and videos of adults or minors engaged in sexually explicit conduct," including any content that may be CSAM.  *Id.* ¶ 35-36.  Further, before February 2025, as is perfectly legal, Passes permitted creators between fifteen and seventeen years old to join Passes "subject to stringent internal safeguards and controls."  *Id.* ¶ 28.  In February 2025, Passes removed all minor creators from the site.  *Id.* ¶ 117.

Lucy Guo, Passes' founder and CEO, is a resident of Los Angeles County, California.  *Id.* ¶ 16; Guo Decl. ¶¶ 2-3.  The daughter of Chinese immigrants, Guo taught herself how to code in middle school before attending Carnegie Mellon University.  After being selected for a prestigious Thiel Fellowship, Guo left Carnegie Mellon and quickly launched her career.  *Id.*  Guo co-founded Scale AI, a leading tech company used to train AI applications, in 2016.  After leaving Scale AI in 2018, Guo started Backend Capital, a venture capital firm specializing in startups.  In 2022, Guo founded Passes.  Forbes recently recognized Guo as the youngest self-made woman billionaire.[3]

Defendant Nofhotos Group LLC is registered and headquartered in Orange County, California and was founded by Defendant Alec Celestin.  Compl. ¶ 14.  Celestin, a resident of Los

---

[2] Because the Passes Defendants challenge Plaintiff's choice of venue, the Court "may consider matters outside the pleadings such as affidavit testimony."  *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).

[3] Kerry A. Dolan, *This AI Founder Has Unseated Taylor Swift as the World's Youngest Self-Made Woman Billionaire*, Forbes (Apr. 17, 2025), https://www.forbes.com/sites/kerryadolan/2025/04/17/this-ai-founder-lucy-guo-scale-ai-has-unseated-taylor-swift-as-the-worlds-youngest-self-made-woman-billionaire/.

Angeles, California, is Plaintiff's former manager.[4]  *Id.* ¶¶ 17, 59-60.  Celestin has never been an employee of Passes.  Defendant WLM Management LLC ("WLM") is a management company registered and headquartered in West Hollywood, California.  *Id.* ¶ 15.  Plaintiff and WLM executed a management contract on August 12, 2024.  *Id.* ¶ 60.  Defendant Lani Ginoza is a resident of Los Angeles, whom the Complaint alleges was Celestin's assistant.  *Id.* ¶ 18.  Ginoza was not an employee of Passes during the time of any of the conduct alleged in the Complaint.  *Id.*

Plaintiff Alice Rosenblum is a former Passes creator.  *Id.* ¶ 12.  Although the Complaint alleges she resides in Miami-Dade County, Florida, *id.*, when Plaintiff registered for her Passes account, she was a resident of North Carolina, Guo Decl. ¶ 7.

**B.    The Complaint's Allegations**

Plaintiff's claims arise out of the alleged actions of Plaintiff's manager, Celestin, whom the Complaint alleges "recruited" Plaintiff to "join Passes as a minor Creator" and to "create images and videos of [Plaintiff] engaged in sexually explicit conduct" while she was still seventeen years old.  *Id.* ¶¶ 53.  Per the Complaint, Celestin's scheme began in May 2024, when he first contacted Plaintiff.  *Id.*  In August 2024, one month before Plaintiff's eighteenth birthday, Celestin invited Plaintiff to his home in Los Angeles.  *Id.* ¶ 55-56.  The Complaint claims that while at his home, Celestin "recruit[ed] [Plaintiff] to join Passes" and "took photographs" of her.  *Id.* ¶¶ 56, 58.  Celestin also had Plaintiff sign a management contract.  *Id.* ¶ 59.  After this meeting, Celestin continued to serve as her manager, and Plaintiff and Celestin signed further management contracts, including one in December 2024, after Plaintiff had turned eighteen.  *Id.* ¶¶ 60, 108.

---

[4] On April 1, 2025, Celestin filed for Chapter 7 bankruptcy.  *In re Celestin*, Case No. 8:25-bk-10841 (Bankr. C.D. Cal. Apr. 1, 2025), ECF No. 1.  The Passes Defendants reserve all rights to assert claims against Celestin and his associated entities for alleged misconduct using the Passes platform.

At or shortly after their initial meeting, Celestin helped Plaintiff create a profile on Passes. *Id.* ¶ 64. The Complaint claims that, to get around Passes' Guidelines for minors, Celestin called Guo, and after the call, Celestin told Plaintiff that Guo "eliminated Passes' requirement for confirmation of parental consent for Plaintiff to become a minor Creator." *Id.* ¶ 69. The Complaint does not allege that Plaintiff was privy to the purported conversation between Celestin and Guo, or that she knows what was said on the call, or that Celestin ever told Guo about his alleged intention to circumvent Passes' restrictions for minors in order to post allegedly prurient content of Plaintiff on Passes. To the extent the Complaint is not dismissed, the evidence will show that the Passes Defendants had no knowledge whatsoever of Celestin's alleged intent to do so.

Once Celestin finished creating Plaintiff's Passes account, the Complaint claims, with no factual support, that Plaintiff spoke with Guo who told her how to upload content onto Passes. *Id.* ¶ 76. Plaintiff does not allege that she and Guo discussed uploading explicit content (nor could she, because no such conversation ever occurred). The Complaint also claims that, on the same day, Celestin and Ginoza asked Guo to "override the direct messaging ban" for Plaintiff. *Id.* ¶ 78. The Complaint does not allege that Plaintiff was privy to any purported conversation between Celestin, Ginoza, and Guo, or that she knows what was said during the conversation, or that Celestin and Ginoza ever told Guo about the true reason they wanted Plaintiff to be able to direct message Passes subscribers. To the extent the Complaint is not dismissed, the evidence will show that the Passes Defendants had no knowledge of Celestin and Ginoza's alleged intent to do so.

The Complaint further alleges that in August and September 2024, while Plaintiff was seventeen years old, Celestin and Ginoza marketed Plaintiff's Passes account by sending direct messages with sexually explicit content to Passes customers in violation of Passes' Guidelines. *Id*. ¶¶ 41, 86, 103-07. Celestin also allegedly directed Plaintiff to create additional explicit content to

post to her account on her eighteenth birthday (again, in violation of Passes' Guidelines). *Id.* ¶¶ 41, 100-01, 109-16.  The Complaint speculates that Passes' machine learning program identified Plaintiffs' content and messages as explicit but provides no factual support for those assertions. *Id.* ¶¶ 85, 87, 107.  The Complaint does not (and could not) allege that Guo was responsible for reviewing, did review, or directed anyone to review the content allegedly flagged by the program.

## **ARGUMENT**

I. **This Case Must Be Dismissed, or, in the Alternative, Transferred Because Venue Does Not Lie in the Southern District of Florida**

Plaintiff bears the burden of "showing that the venue selected is proper." *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1313 (S.D. Fla. 2018).  Plaintiff has not carried her burden because (i) all Defendants reside within the Central District of California, not Florida; and (ii) a "substantial part of the events or omissions giving rise to the claim" occurred within the Central District of California, not Florida.  28 U.S.C. § 1391(b).  Because venue is proper in the Central District of California, this Court must either "dismiss, or if it be in the interest of justice, transfer" this case to the Central District of California.  *Id.* § 1406(a).

Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  *Id.* § 1391(b); *see* 18 U.S.C. § 2255(c)(1) (venue for §§ 2252 and 2252A actions is proper in district that satisfies 28 U.S.C. § 1391).  An individual "reside[s] in the judicial district in which that person is domiciled," and a company resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c).

***Defendants' Residences.***  The Complaint's claim that "Passes maintains an office in this District, and Guo resided in this District at all times relevant," Compl. ¶ 22, is factually wrong and

legally irrelevant.  Passes is incorporated in Delaware and has been headquartered in Los Angeles, California since July 2024.  Guo Decl. ¶ 5.  Guo moved to California in July 2024 and has been a resident of Los Angeles County since that time.  *Id.* ¶ 3.  Guo purchased a home in West Hollywood in September 2024 and paid taxes in California in 2024.  *Id.*  Venue is determined "***based on the facts at the time of filing***," *Flowers Indus., Inc. v. FTC*, 835 F.2d 775, 776 n.1 (11th Cir. 1987) (emphasis added), so what matters is Guo's place of residence at the time Plaintiff filed her Complaint.  And as the Complaint concedes, all other Defendants also reside in California.  Compl. ¶¶ 14-15, 17-18.  Venue thus lies in the Central District of California.

  ***Substantial Part of Events.***  The Complaint does not, and could not, adequately allege that a substantial part of the "relevant activities of the defendant[s], not of the plaintiff" occurred in this District.  *Kennedy v. Gope Hotel Enters.*, 2019 WL 13260529, at *4 (S.D. Fla. May 28, 2019) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).  "[O]nly the events that directly give rise to a claim are relevant," and "only those locations hosting a 'substantial part' of the events are to be considered."  *Id.*  The Complaint cannot satisfy that standard.

  The Complaint does not identify even one act by any Defendant—must less a "substantial part" of the "events that directly give rise to [her] claim"—that occurred in this District.  *Sterling Wholesale, LLC v. Travelers Indem. Co. of Conn.*, 2012 WL 1991456, at *2 (S.D. Fla. May 29, 2012); *Island Sky Corp. v. Hertz*, 2020 WL 13261141, at *3 (S.D. Fla. Feb. 11, 2020) (venue proper in California where it was "the state where a 'substantial part' of the events complained of occurred").  In fact, the Complaint's nearly 100 paragraphs of substantive allegations mention Florida just twice:  once wrongly alleging that Guo is "a resident of Miami-Dade County, Florida," and once alleging that Passes raised $9,000,000 from, among other investors, Florida Funders—a Tampa-based company that has nothing to do with the alleged events.  Compl. ¶¶ 26, 29.

Instead, the Complaint alleges that most, if not all, of the conduct that has a "close nexus" to the alleged wrongs occurred within the Central District of California.[5]  The Complaint does not allege that "any communications between [any Defendant] and [Plaintiff] occurred in Florida," *Hemispherx Biopharma, Inc. v. MidSouth Cap., Inc.*, 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009), or that any of the "alleged actions taken by any defendant" were "initiated or taken in Florida," *TMJ Prac. Mgmt. Assocs. v. Curran*, 2017 WL 3130421, at *4 (S.D. Fla. July 24, 2017).  To the extent the allegations include a location for the alleged wrongs, it is Los Angeles, not Florida. Compl. ¶¶ 56-59, 69-71.  In short, the Complaint "doesn't describe any event that occurred in Florida" at all, so the case should be dismissed or, in the alternative, transferred to the Central District of California.  *See Green v. Duffy*, 2022 WL 3279543, at *2 (S.D. Fla. Aug. 11, 2022).

## II.   The Passes Defendants Are Immune from Liability Under Section 230

If the Court does not dismiss or transfer the case under 28 U.S.C. § 1406, it should dismiss the case under Rule 12(b)(6) because the Passes Defendants are immune under Section 230. Section 230 immunizes providers of an "interactive computer service" (meaning "any information service . . . provider that provides . . . access by multiple users to a computer server") from being "treated as the publisher or speaker of any information provided by another information content provider"—that is, any other person who is "responsible . . . for the creation . . . of information provided through the Internet." 47 U.S.C. §§ 230(c)(1), f(2), f(3).  The statute "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service,'" *Almeida*, 456 F.3d at 1321, including any state laws inconsistent with that broad immunity, *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1246 (S.D. Fla. 2020).  Section 230 preempts the federal statutes at issue in this case, 18 U.S.C.

---

[5] That Plaintiff was a resident of North Carolina when she created her Passes account is further evidence that no conduct related to the alleged wrongs occurred in this District.

§§ 2252 and 2252A, and any state-law equivalent. *M.H. ex rel. C.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022), *aff'd on other grounds*, 122 F.4th 1266 (11th Cir. 2024); *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023).[6]

The Passes Defendants are accordingly immune from civil liability because they (i) are "provider[s] of an interactive computer service," (ii) Plaintiff's claims are "based on information provided by another information content provider," and (iii) Plaintiff's claims "would treat the [Passes Defendants] as the publisher or speaker of that information." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1363-64 (S.D. Fla. 2022). Each prong is satisfied here.

## A.     The Passes Defendants Are Providers of Interactive Computer Services

The Passes Defendants easily fit the "expansive" definition of providers of interactive computer services. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021). Courts consistently hold that web-based platforms like Passes are interactive computer services providers. *E.g.*, *Kik*, 482 F. Supp. 3d at 1248 (mobile messaging app); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (business-rating app); *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015) (social media). Guo was sued solely for alleged actions as Passes' CEO, so she is also a provider of interactive computer services who "qualifies for protection" under Section 230 because the Complaint "seeks to hold [her] accountable for [her] role in making [Passes] available." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014); *accord La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017); *see also*

---

[6] Although one district court has concluded that Section 230 does not preempt 18 U.S.C. §§ 2252 and 2252A, *see Doe #1 v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136, 1170 (N.D. Ala. 2022), that decision is against the significantly greater weight of authority of the federal courts and is wrongly decided. *E.g.*, *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912 at *2; *Zhang v. Twitter Inc.*, 2023 WL 3919546, at *2 (N.D. Cal. June 8, 2023) (no "exception from Section 230 immunity for civil claims premised upon federal criminal statutes—including Plaintiff's Sections 2252 [and] 2252A . . . claims"); *see also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016); *Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019).

*Loomer v. Zuckerberg*, 2023 WL 6464133, at \*12 (N.D. Cal. Sept. 30, 2023) (CEOs immune where "plaintiff sues them based on [company's] conduct"); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at \*5 (N.D. Cal. Oct. 9, 2018) (same), *aff'd*, 786 F. App'x 104 (9th Cir. 2019).

### B.      The Passes Defendants Did Not Create or Develop the Material

It is settled that "a website does not 'create' or 'develop' content simply by providing tools that make user-created content available and usable to others." *Marriott*, 604 F. Supp. 3d at 1364; *see Omegle*, 2022 WL 93575, at \*5 ("[P]roviding the forum where harmful conduct took place cannot . . . serve to impose liability."); *Calise*, 103 F.4th at 745 ([P]roviding neutral tools as to the alleged unlawfulness does not amount to development."). Instead, to allege that the Passes Defendants "created" or "developed" the challenged Material, Plaintiff must allege that the Passes Defendants "***materially contributed*** to the unlawful nature of the content." *Marriott*, 604 F. Supp. 3d at 1364 (emphasis added); *see Coffee v. Google, LLC*, 2021 WL 493387, at \*7 (N.D. Cal. Feb. 10, 2021) ("material contribution" requires service to "contribute[] materially to the alleged illegality of the conduct"). The material contribution test draws a "crucial distinction" between "taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content" and "responsibility for what makes the displayed content illegal or actionable." *Kimzey*, 836 F.3d at 1269 n.4. Only the latter conduct satisfies the "material contribution" test.

The Complaint comes nowhere close to alleging that the Passes Defendants "materially contributed" to the unlawful nature of the Material. Indeed, the Complaint barely alleges any direct action by the Passes Defendants at all. And what little conduct it does allege is that the Passes Defendants provided "tools and functionality available equally to bad actors and [Passes'] intended users": permitting Plaintiff to use Passes' direct messaging service. *See Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019). Courts regularly conclude that Section 230 immunizes internet service providers who permit users to use messaging services because such

messaging services are content neutral. *E.g.*, *Omegle*, 2022 WL 93575, at *1 (website that allowed users to communicate "anonymously in real time by text, audio, and video" immune under Section 230); *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021) ("[P]rivate messaging appl[ies] broadly across Reddit and do[es] not play any special role in the illegality.").

Plaintiff also cannot overcome Section 230 immunity by alleging that Guo allowed Plaintiff full access to Passes even though Plaintiff was a minor, because a website's choices about who may "sign up for accounts on its social network" reflect "choices about what [third-party] content can appear," *Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 973 (N.D. Cal. 2016), which are "moderation decisions" at "the undisputed core of Section 230 immunity," *Doe (K.B.) v. Backpage.com, LLC*, 2025 WL 719080, at *4 (N.D. Cal. Mar. 3, 2025); *see Lloyd v. Facebook, Inc.*, 2024 WL 5121035, at *5 (N.D. Cal. Dec. 16, 2024) (rejecting argument that "Defendants are obligated to follow their own policies" to remove certain content); *see also* 47 U.S.C. § 230(c)(2) (providing immunity for "good faith" moderation decisions).[7] Were the rule otherwise, the Passes Defendants would incur greater liability for having guidelines and allegedly making an exception to those rules than if Passes had no rules in place at all. That would flout Congress's express purpose of "remov[ing] disincentives for the development and utilization of blocking and filtering technologies." 47 U.S.C. § 230(b)(4).

The Complaint's baseless allegation that the Passes Defendants did not take "any remedial action" when Passes' machine learning classifiers "identified the images and videos as child pornography," Compl. ¶ 85, fares no better. The Complaint offers no factual allegations to support how Plaintiff could know that her content purportedly triggered such filters.

---

[7] Tellingly, the Complaint does not allege that permitting Plaintiff to join Passes, or allowing her to use its messaging function, was illegal in itself.

C.      **The Passes Defendants Are Not the "Publishers or Speakers" of the Material**

Because the Passes Defendants simply provide a content-neutral platform, Section 230 prohibits holding them liable as "publishers or speakers" of content published on the platform, including for an alleged "failure to regulate [that] third party content." *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1053-54 (C.D. Cal. 2023); *see Herrick*, 765 F. App'x at 591 (provider immune for "alleged failure to edit, monitor, or remove the offensive content"); *Dryoff v. Ultimate Software Grp.*, 934 F.3d 1093, 1097-98 (9th Cir. 2019) (website that merely "published information created or developed by third parties" immune under Section 230).  Section 230 strikes a balance by protecting neutral platforms with broad immunity, while offering no protection to those who post illegal content.  *See* 47 U.S.C. § 230(b).  Congress recognized that without immunity, platforms would shut down for fear they might be held liable for objectionable third-party content on their platforms, chilling speech.  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997).  That is what the Complaint seeks to do here: hold the Passes Defendants liable for Celestin and Ginoza's alleged conduct in uploading unlawful content to Passes.  Section 230 forecloses that result.

D.      **The Passes Defendants Are Not Vicariously Liable for the Actions of Celestin and Ginoza**

The Complaint gestures at an attempt to hold the Passes Defendants vicariously liable for the conduct of Celestin and Ginoza, whom the Complaint conclusorily asserts were the Passes Defendants' "agents."  *E.g.*, Compl. ¶¶ 53, 77.  This last-ditch effort fails.

As a starting point, the Complaint fails to allege a vicarious liability theory.  Vicarious liability "should be brought in a separate count," and the failure to do so renders the Complaint an "impermissible shotgun pleading" that must be dismissed.  *Smith v. Carnival Corp. & PLC*, 2022 WL 16791783, at *3 (S.D. Fla. Nov. 8, 2022); *see Hayes v. Bank of N.Y. Mellon*, 2014 WL

14

3887922, at *8 (N.D. Ga. Aug. 6, 2014) (dismissing complaint that "mix[ed] together and conjoin[ed] multiple legal theories within their counts"), *aff'd*, 592 F. App'x 891 (11th Cir. 2015).

Even if the Complaint had pled a vicarious liability theory (it did not), it does not allege Celestin and Ginoza were the Passes Defendants' agents, because it does not plausibly allege that the Passes Defendants "acknowledg[ed]" Celestin and Ginoza would act for them, that Celestin or Ginoza "accept[ed] . . . the undertaking," or that the Passes Defendants "control[led]" Celestin and Ginoza's conduct. *Amstar Ins. Co. v. Cadet*, 862 So. 2d 736, 741 (Fla. Dist. Ct. App. 2003); *accord Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664, 688 n.11 (2024) (agent has actual authority to do acts principal "intentionally delegated" and acts "impliedly necessary to perform" delegated tasks).[8]

Nor does the Complaint come close to pleading that Celestin and Ginoza are the Passes Defendants' apparent agents. The foundation of Plaintiff's theory that Celestin acted as the Passes Defendants' agent is two Instagram and two Twitter posts from Celestin in which he mentions Passes or tags the Passes Defendants. Compl. ¶¶ 50-52. But the Complaint does not allege that the Passes Defendants made any "representation" that Celestin would act for them or that Plaintiff relied on any such representation, as is required to allege apparent agency. *See J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316, 329 (Fla. Dist. Ct. App. 2017); *accord Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 747 (1997) (same under California law). *Celestin* posted to Instagram and Twitter concerning his purported relationship with Passes, Compl. ¶¶ 50-52, and *Celestin* asserted that he "co-owned" Passes and that Guo was his "business partner," *id.* ¶¶ 68-69. The allegations as to Ginoza's purported agency relationship with Passes are even barer. Other than alleging that Ginoza, at some unspecified point in time,

---

[8] The Complaint does not even allege sufficient facts to indicate the law that might apply to determine any purported agency relationship, but under either California or Florida law, the Complaint has not sufficiently alleged an actual or apparent agency relationship.

was a "former Passes director of talent," *id.* ¶ 77, the Complaint pleads nothing that even suggests an apparent agency relationship.  It pleads no representation at all by Guo about Ginoza and no reliance by Plaintiff.  *See J.P. Morgan*, 224 So. 3d at 329; *Kaplan*, 59 Cal. App. 4th at 747.

Instead, the Complaint alleges that Plaintiff and Celestin executed multiple management contracts and acted as Plaintiff's talent agents.  Compl. ¶¶ 59-60.  At most, Celestin and Ginoza were ***Plaintiff's*** agents, including after she became an adult.  If the allegations are true, Celestin and Ginoza should be held liable for outrageous violations of their responsibilities to their minor client.  But Passes cannot be held liable for the action of Plaintiff's own agents.

Even if the Complaint could overcome those gating flaws, the Passes Defendants would only be liable for acts Celestin and Ginoza committed "within the scope of [their] express or implied, i.e., [their] 'actual or real' authority."  *Taco Bell of Cal. v. Zappone*, 324 So. 2d 121, 123 (Fla. Dist. Ct. App. 1975).  The Complaint does not allege the scope of any authority, nor could it, because Celestin and Ginoza were acting on behalf of Plaintiff, not Passes.  Nor does the Complaint allege anything suggesting that producing and disseminating sexually explicit content of a minor, in violation of federal law, state law, and Passes' Guidelines, would be within the scope of Celestin or Ginoza's actual or apparent authority.  The Complaint's allegation that Passes "implements stringent internal security measures to protect . . . minor Creators," Compl. ¶¶ 40, suggests just the opposite:  that Celestin and Ginoza's conduct—which allegedly violated criminal laws—was ***not*** within the scope of any agency relationship because their conduct "did not further the [Passes Defendants'] interests."  *Ivanov v. Sobel*, 654 So. 2d 991, 992 (Fla. Dist. Ct. App. 1995).

## III.   The Complaint Fails to State a Claim Against the Passes Defendants

Even if the Court finds the Passes Defendants are not immune under Section 230 (they are), the Court should still dismiss the Complaint against the Passes Defendants because it fails to allege that the Passes Defendants "knowingly receive[d], or distribute[d]" the Material, as is required to

state a claim under 18 U.S.C. §§ 2252 and 2252A, or that they "knowingly use[d] [Plaintiff] in the production of" the Material, as is required to state a claim under Fla. Stat. § 847.012.

### A.    The Complaint Fails to Plausibly Allege the Passes Defendants Knowingly Received or Distributed the Material

To allege the Passes Defendants acted knowingly, the Complaint must allege the Passes Defendants knew they possessed or accessed the Material and knew of "the sexually explicit nature of the material." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  The Complaint does not plausibly allege the Passes Defendants "**knowingly** possessed or accessed" the Material or "accessed [the Material] **knowing** it was child pornography." *M.H. ex rel. C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1272 (11th Cir. 2024); *Doe v. WebGroup Czech Republic, a.s.*, 2024 WL 3533426, at *10 (C.D. Cal. July 24, 2024).  In fact, the Complaint does not allege that Guo ever possessed or accessed the Material at all.

The Complaint "fulsomely recounts" Celestin and Ginoza's "conduct in creating, accessing, and distributing child pornography, but it does not make comparable factual allegations about" the Passes Defendants.  *Omegle*, 122 F.4th at 1271-72.  The Complaint's "conclusory allegations"—that Guo "kn[ew] that Plaintiff was a minor and of Celestin's plans," and that the Passes Defendants knew that Celestin and Ginoza were distributing the Material "from the multiple machine learning classifiers," Compl. ¶¶ 72, 81, 89—"are simply not substantiated by the facts alleged." *Bretifeller v. Playboy Ent. Grp.*, 2005 WL 2088418, at *3 (M.D. Fla. Aug. 30, 2005). The Complaint does not (and could not) allege that Celestin or Ginoza told Guo of their plans, that Guo knew the Material was posted on Passes, or any facts supporting the Complaint's purely speculative allegation that Passes' moderation systems flagged the Material.[9] *See Doe v. Fry*, 2012

---

[9] Because the assertion that Passes' moderation systems identified the Material is plainly speculative, the Court need not accept it as true.  *Hyde v. Bowman*, 2024 WL 2796506, at *4 (11th Cir. 2024).  It is also incorrect.

WL 13102263, at *4-5 (M.D. Fla. Apr. 9, 2012) (alleging defendants "knew Plaintiff was a minor at the time they received or distributed" allegedly explicit photos insufficient).

The Complaint's pleading deficiencies are even more glaring when viewed against allegations the Eleventh Circuit has found insufficient to state a claim under §§ 2252 and 2252A. In *Omegle*, the Eleventh Circuit found plaintiff's allegations that the defendant "allowed its 'website to become a means of online child exploitation'" and "knew that people . . . would exploit its technology to connect with minors" to "record[] images of child pornography" insufficient to allege defendant's knowledge. 122 F.4th at 1272. And in *Fenix*, the Southern District of Florida rejected plaintiff's "speculation" that the defendant "benefit[ed] from sales of the video despite knowing what was on the video" as "plainly [not] enough." 2025 WL 336741, at *9.

By contrast, in *MG Freesites*, the Northern District of Alabama found plaintiff stated §§ 2252 and 2252A claims where she alleged defendants "actively control which videos are posted," "review every video," "retitle videos indicating CSAM but leave the videos available for distribution," and "create and suggest tags indicating CSAM for uploaders to use." 676 F. Supp. 3d at 1168. *MG Freesites* illustrates precisely what is missing here. There, the defendant allegedly "access[ed] and view[ed] videos," "provid[ing] knowledge of the video content and knowing receipt of the videos."[10] *Id.* at 1169. The Complaint alleges nothing of the sort here (nor could it).

### B.   The Complaint Fails to Allege the Passes Defendants Produced the Material

The Complaint does not plausibly allege that the Passes Defendants "knowingly use[d] a minor in the production of" any content "which depicts," *inter alia*, "nudity or sexual conduct" as

---

[10] Instead, here, immediately upon learning that the Material was posted on Passes, the Passes Defendants "suspended Plaintiff's access to her creator profile on Passes" and removed the Material. Compl. ¶ 117. Passes subsequently "removed the option for minors between 15 and 17 years old to join as Creators." *Id.*

is required to state a claim under Fla. Stat. § 847.012.  It claims that Celestin took photographs of Plaintiff, and that Celestin and Ginoza directed Plaintiff to create explicit photos and videos, Compl. ¶¶ 58, 83, 110, 112, but alleges nothing of the sort against the Passes Defendants.  The Complaint's only attempt to implicate the Passes Defendants in Celestin and Ginoza's scheme is to cursorily assert, with no supporting factual allegations, that Celestin and Ginoza were the Passes Defendants' agents.  Even if an agency relationship was sufficient to support liability under these criminal statutes (it is not), this attempt fails for the reasons explained above.  *See supra* § II.D.

## IV.    The Class Action Allegations Should Be Stricken, or, Alternatively, Dismissed

To the extent any portion of the Complaint survives the Motion to Dismiss, the Court should strike the putative class action allegations from the Complaint pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1), and 23(d)(1)(D).[11]  Rule 23(d)(1)(D) permits a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Under Rule 23 and Rule 12(f), courts have discretion to strike class allegations if "the propriety of a class action procedure is plain from the initial pleadings."  *Vandenbrink*, 2012 WL 3156596, at *3; *see also Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (striking class allegations where "plaintiffs do not complain about the same alleged" misconduct); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *14 (N.D. Cal. Dec. 4, 2009) ("[I]t is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources.").

---

[11] Alternatively, the Court should dismiss Plaintiff's class allegations under Rule 12(b)(6).  Some courts in this Circuit have stated that the proper procedure is to file a "motion to strike/dismiss or deny class allegations."  *E.g.*, *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012).  Whatever the mechanism, the standard of review is the same: "the issues [must be] . . . plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  *Id.*  Under that standard, the class allegations fail.

"[T]he propriety *vel non* of class certification can be gleaned from the face of the pleadings" here. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008). The Complaint makes "only conclusory allegations about the existence of other class members." *Borgese v. Baby Brezza Enters. LLC*, 2021 WL 634722, at *6 (S.D.N.Y. Feb. 18, 2021). It does not contain a single non-conclusory allegation "identify[ing] a single member of the purported class" other than Plaintiff, nor does it allege that Plaintiff conducted an "inquiry" into whether any class members exist. *See PFT of Am., Inc. v. Tradewell, Inc.*, 1999 WL 179358, at *1-2 (S.D.N.Y. Mar. 31, 1999).

*Second*, to maintain a class action, Plaintiff must satisfy Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement. *See* Compl. ¶ 152 (invoking Rule 23(b)(3)). The Complaint makes *individualized* allegations about a *single* alleged victim, who was allegedly exploited by two individuals, who were allegedly able to exploit her because of a *single* override of industry-leading content controls related to minors. *Id.* ¶¶ 35-40. Plaintiff's claims require "individual factual inquiries," so "it is apparent" from the Complaint that "individualized issues are predominant and this suit cannot proceed as a class action." *Vandenbrink,* 2012 WL 3156596, at *3; *see Saunders v. BellSouth Advert. & Pub. Corp.*, 1998 WL 1051961, at *2 (S.D. Fla. Nov. 10, 1998) (dismissing class allegations on the pleadings where certification would "require distinctly case-specific inquiries into the facts surrounding each alleged incident").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for lack of proper venue or, in the alternative, transferred to the Central District of California. Alternatively, the Court should dismiss the Complaint with prejudice because it does not state a claim against the Passes Defendants. If the Court does not dismiss the Complaint, the Court should strike the class action allegations.

20

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b), Defendants Passes, Inc. and Lucy Guo (the "Passes Defendants") respectfully request the Court hear oral argument on their Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Strike the Complaint's Class Action Allegations (the "Motion"). Given the variety, complexity, and sensitivity of the issues raised in the Motion, the Passes Defendants believe that oral argument would assist the Court in deciding the Motion. The Passes Defendants anticipate requiring twenty-five minutes for argument.

21

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)</u>

Counsel for Defendants Passes, Inc. and Lucy Guo sought to meet and confer with Plaintiff's counsel regarding the Passes Defendants' motion to dismiss or transfer for improper venue.  Despite multiple attempts, as of the date of this filing, Plaintiff's counsel would not confirm Plaintiff's position on the motion.


Dated: April 28, 2025                              Respectfully Submitted,


|  |  |
|---|---|
|  | /s/Freddy Funes |
| Rollo C. Baker, IV (*pro hac vice* forthcoming) | Brian W. Toth |
| Vivek Tata (*pro hac vice* forthcoming) | Florida Bar No. 57708 |
| Alexander S. Davis (*pro hac vice* forthcoming) | Freddy Funes |
| Chase J. Shelton (*pro hac vice* forthcoming) | Florida Bar No. 87932 |
| Elsberg Baker & Maruri, PLLC | Ingraham Building |
| 1 Penn Plaza | 25 Southeast Second Avenue, Suite 805 |
| New York, NY 100119 | Miami, Florida 33131 |
| Tel: (212) 597-2602 | (305) 717-7850 |
| rbaker@elsberglaw.com | btoth@tothfunes.com |
| vtata@elsberglaw.com | ffunes@tothfunes.com |
| adavis@elsberglaw.com | |
| cshelton@elsberglaw.com | *Counsel for Defendants Passes, Inc. and Lucy Guo* |

*Counsel for Defendants Passes, Inc. and Lucy Guo*