UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 25-20899-CIV-MARTINEZ

ALICE ROSENBLUM, on behalf of herself and
all others similarly situated,

    Plaintiff,

v.

PASSES, INC., NOFHOTOS GROUP LLC,
WLM MANAGEMENT LLC, LUCY GUO,
ALEC CELESTIN, and LANI GINOZA,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants Passes, Inc.'s ("Passes") and Lucy Guo's Motion to Dismiss Plaintiff's Complaint and Strike the Complaint's Class Action Allegations ("Motion"), (ECF No. 12). The Court has reviewed the Motion, Plaintiff's Response, (ECF No. 27), Defendants' Reply, (ECF No. 30), the record, relevant law, and is otherwise fully advised.

### I. BACKGROUND

#### A. The Parties

Plaintiff Alice Rosenblum, a former Creator[1] for Passes, alleges that she is a victim of child pornography. (ECF No. 1, Compl. ¶ 12). Plaintiff currently resides in Miami-Dade County. (*Id.*).

---

[1] "'Creators' are social media figures and entrepreneurs who make content for various social media platforms, have many followers across the various social media platforms, and who monetize their social media presence through paid publicity." (Compl. ¶ 23).

Defendant Passes is a Delaware corporation with its principal place of business in Miami, Florida.[2] (*Id.* ¶ 13). Defendant Guo is the founder and Chief Executive Officer of Passes. (*Id.* ¶ 16). Plaintiff alleges that Guo was a resident of Miami-Dade County, Florida "at all times relevant." (*Id.*). Passes, founded in 2022, is a subscription-based content platform that allows Creators to monetize their social media content by providing customers with exclusive content and the ability to directly interact with Creators. (*Id.* ¶¶ 24, 26). Passes claims that "no nudity or sexual content is allowed on its platform." (*Id.* ¶ 34). Passes has Guidelines that prohibit any adult content, nudity, or pornography. (*Id.* ¶¶ 40–41). "One of Passes' key differentiators from other content platforms is that Passes has a machine learning algorithm that reviews all content uploaded to the Passes platform to improve safety particularly for minors who are permitted to join Passes as Creators." (*Id.* ¶ 35). "The Passes machine learning algorithm can and does identify images and videos of adults or minors engaged in sexually explicit conduct." (*Id.* ¶ 36). Before February 2025, Passes permitted Creators between fifteen and seventeen years old to join Passes "subject to stringent internal safeguards and controls." (*Id.* ¶¶ 28, 117). Guo, at her sole discretion, can override Passes'

---

[2] While Guo states in her Declaration that Passes relocated its headquarters to Los Angeles, California in July 2024, (ECF No. 12-1 ¶ 5), business records from the Secretary of State of both Florida and California as recent as June 2025 and May 2025 indicate that Passes' principal place of business is in Florida. The Court takes judicial notice of these facts to resolve the issue of Passes' residence to determine whether venue is proper in this District because these facts can be accurately and readily determined from public reports by the Florida Secretary of State and the California Secretary of State, the accuracy of which cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports."); *United States v. Howard*, 28 F.4th 180, 186 n.2 (11th Cir. 2022) (taking judicial notice of "a publicly available state agency record"); *McDaniel v. Burlington Coat Factory of Fla., LLC*, No. 16-62729-CIV, 2016 WL 10932749, at *1 n.3 (S.D. Fla. Dec. 29, 2016) (noting that courts may take judicial notice of the public records of the State of Florida's Division of Corporations when considering a 12(b)(6) motion to dismiss without converting the motion to one for summary judgment).

"stringent internal safety measures for minors on Passes." (*Id.* ¶ 44). In February 2025, Passes removed all minor Creators from the platform. (*Id.* ¶ 117).

Defendant Nofhotos Group LLC is a California limited liability company with a principal place of business in Los Alamitos, California. (*Id.* ¶ 14). Nofhotos Group LLC was founded by Defendant Alec Celestin, a resident of Los Angeles, California. (*Id.* ¶ 17). Celestin is Plaintiff's former manager. (*Id.* ¶ 59–60). Defendant Lani Ginoza, resident of Los Angeles, California, was Celestin's assistant at all times relevant. (*Id.* ¶ 18). Defendant WLM Management LLC is a California limited liability company with a principal place of business in West Hollywood, California. (*Id.* ¶ 15). Plaintiff alleges that Defendants Nofhotos Group LLC, Celestin, Ginoza, and WLM Management LLC acted as agents of Passes and Guo. (*Id.* ¶¶ 14, 15, 17, 18).

### B. The Complaint's Allegations

Plaintiff alleges that around May 2024, Celestin "began to recruit and groom" Plaintiff, who was seventeen years old at the time, to join Passes as a minor Creator and to create images and videos of her engaged in sexually explicit conduct. (*Id.* ¶ 53). Celestin told Plaintiff that she could create pictures and videos of herself and upload them to Passes on a regular basis, and Celestin, with access to Plaintiff's Creator account, would directly market and sell her content to Passes customers. (*Id.* ¶ 57).

On or about August 10, 2024, Celestin met Plaintiff at his Los Angeles, California residence and started helping her create a minor Creator profile on Passes. (*Id.* ¶¶ 56, 64). Celestin took photographs of Plaintiff at his residence and later uploaded and published those photos to Passes "with salacious verbiage." (*Id.* ¶ 58). Celestin "assured Plaintiff that he could bypass the safety measures for minors because he 'co-owned' Passes and would obtain the express approval of his 'business partner Lucy [Guo].'" (*Id.* ¶ 68). On the same day, while Plaintiff was still at

3

Celestin's Los Angeles home, Celestin called Guo and asked her to waive Passes' parental consent requirement for Plaintiff's Creator account. (*Id.* ¶¶ 69–72).

Also on August 10, 2024, Celestin had Plaintiff sign a management contract. (*Id.* ¶ 59). Celestin then had Plaintiff sign a second management contract with WLM Management LLC on August 12, 2024, (*id.* ¶ 60), and a third management contract replacing WLM Management LLC with Nofhotos Group LLC on December 24, 2024, (*id.*).

On or about August 13, 2024, Celestin finished creating Plaintiff's minor Creator account. (*Id.* ¶ 73). After Plaintiff expressed unfamiliarity with the Passes application to Celestin, Plaintiff, Celestin, and Guo had a phone call to provide Plaintiff with specific guidance and instruction regarding the Passes platform, and Guo instructed Plaintiff on how and where to upload content onto the Passes system. (*Id.* ¶¶ 74–76). That same day, Celestin and Ginoza asked Guo to override the direct messaging ban for Plaintiff's minor Creator profile so that Celestin, Ginoza, and others could utilize the direct messaging function on Plaintiff's profile, and Guo did so. (*Id.* ¶¶ 78–81).

Between August 13 and September 21, 2024, Plaintiff, at the direction of Celestin and Ginoza, took photos and videos of herself engaged in sexually explicit conduct and uploaded them to a Passes database assigned to her profile. (*Id.* ¶ 84). Passes' proprietary machine learning classifiers reviewed the uploaded images and videos and identified them as child pornography. (*Id.* ¶ 85). Neither Passes nor Guo took any remedial action. (*Id.*). Between August 13 and September 21, 2024, "images and videos of Plaintiff, a minor, engaged in sexually explicit conduct were then marketed, sold and distributed by Passes' agents[3] through the Passes direct messaging platform." (*Id.* ¶ 86). In addition, Celestin, Ginoza, "and other unidentified individuals" "impersonat[ed]

---

[3] It is unclear whether these alleged agents were Celestin and Ginoza or other unknown individuals.

then-17-year-old Plaintiff on the Passes direct messaging system," and engaged with so-called "whales" and "big spenders" in sexually aggressive ways to bait the subscribers into purchasing images and videos of Plaintiff engaged in sexually explicit conduct at premium prices. (*Id.* ¶¶ 90, 103–06).

On or about September 21, 2024, Plaintiff turned eighteen years old. (*Id.* ¶ 108). Celestin and Ginoza directed Plaintiff, while still a minor, to create new images and videos of her engaged in sexually explicit conduct with a birthday theme before her eighteenth birthday. (*Id.* ¶ 109). Then, on Plaintiff's actual birthday, Celestin would market, sell, and distribute the explicit material. (*Id.*).

On or about February 18, 2025, after Plaintiff's counsel contacted Passes' lawyers to alert them of the child pornography issue, Passes unilaterally suspended Plaintiff's access to her Creator profile. (*Id.* ¶¶ 117–18). On or about February 24, 2025, Passes removed the option for minors between the ages of fifteen and seventeen to join as Creators. (*Id.* ¶ 117).

Plaintiff brings this six-count Complaint on behalf of herself, and all others similarly situated. (*See* Compl.). Count One alleges a violation of 18 U.S.C. §§ 2252 and 2252A, receipt, distribution, and possession of child pornography, against all Defendants. (*Id.* ¶¶ 119–25). Count Two alleges a violation of Florida Statute § 847.012, receipt, distribution, and possession of child pornography, against all Defendants. (*Id.* ¶¶ 126–32). Count Three alleges a violation of Florida Statute § 847.0138, transmission of material harmful to minors, against Defendants Celestin and Ginoza. (*Id.* ¶¶ 133–38). Counts Four through Six are claims for declaratory judgment against Defendants Celestin, WLM Management LLC, and Nofhotos Group LLC. (*Id.* ¶¶ 139–51).

## II. DISCUSSION

Defendants Passes and Guo (collectively, "Passes Defendants") argue that Plaintiff has not, and cannot meet, her threshold burden of demonstrating that venue is proper in the Southern

District of Florida, and the Court should dismiss the Complaint or transfer this action to the district in which venue is proper. The Passes Defendants also argue that the Complaint should be dismissed because they are immune from liability under Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 and the Complaint fails to plausibly alleges that they violated 18 U.S.C. §§ 2252 and 2252A. The Passes Defendants further argue that if the Court does not dismiss or transfer the Complaint, the Court should strike the Complaint's class action allegations because Plaintiff's claims are not capable of class-wide treatment. As the Court finds that venue is not proper in this District and the interests of justice weigh in favor of transfer, the Court will not address the Passes Defendants' remaining arguments.

### A. Venue is not proper in the Southern District of Florida.

"On a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). "The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Id.* "The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.*

Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b); *see* 18 U.S.C. § 2255(c)(1) (venue for §§ 2252 and 2252A actions is proper in district that satisfies 28 U.S.C. § 1391). An individual "reside[s] in the judicial district in which that person is domiciled," and a company resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c).

Here, Plaintiff asserts that venue in the Southern District of Florida is proper "because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District. Furthermore, Passes maintains an office in this District, and Guo resided in this District at all times relevant." (Compl. ¶ 22). However, even taking Plaintiff's allegations as true and finding that Passes and Guo are residents of this District for venue purposes, Plaintiff alleges that individual Defendants Celestin and Ginoza reside in California—not Florida. (*See id.* ¶¶ 17–18). Thus, Plaintiff has not met her burden of proving that venue is proper under § 1391(b)(1).

In determining whether venue is proper under § 1391(b)(2), the Court must "focus on relevant activities of the defendant, not of the plaintiff." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003) (internal quotation omitted). "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Id.* at 1371. "While certain kinds of events may be necessary to give rise to the claim, only those actions which were, in and of themselves, wrongful or had a close nexus to the wrong could form the basis of proper venue." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009) (citation modified); *see also Jenkins Brick*, 321 F.3d at 1372.

Plaintiff's Complaint contains only four allegations relating to Florida: that Plaintiff currently resides in Miami-Dade County, Florida, (Compl. ¶ 12); Defendant Passes has its principal place of business in Miami, Florida, (*id.* ¶ 13); Defendant Guo is a resident of Miami-Dade County "at all times relevant," (*id.* ¶ 16); and that Passes raised $9,000,000 from, among other investors, Florida Funders, a Tampa-based company, (*id.* ¶ 29). None of these allegations are actions by a defendant that were wrongful or had a close nexus with the causes of action alleged in the Complaint. Thus, none of these allegations are relevant to the Court's venue analysis.

7

Plaintiff does not provide any allegations that the wrongful conduct occurred in this District. Instead, the Complaint alleges that most, if not all, of the conduct that has a "close nexus" to the alleged wrongs occurred within the Central District of California. The Complaint does not allege that "any communications between [any Defendant] and [Plaintiff] occurred in Florida," *Hemispherx Biopharma*, 669 F. Supp. 2d at 1357, or that any of the "alleged actions taken by any defendant" were "initiated or taken in Florida," *TMJ Prac. Mgmt. Assocs., Inc. v. Curran*, No. 16-81903-CIV, 2017 WL 3130421, at *4 (S.D. Fla. July 24, 2017). To the extent the allegations include a location for the alleged wrongs, it is Los Angeles, California, not Florida. The Complaint does not describe any event that occurred in Florida. Therefore, Plaintiff did not meet her burden of proving that venue properly lies within this District.

### B. The interests of justice weigh in favor of transfer.

The Passes Defendants have requested that if the Court finds venue improper, Plaintiff's Complaint be dismissed, or in the alternative, transferred to the Central District of California. (ECF No. 12 at 10). When a court finds that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The U.S. Supreme Court has indicated a preference for transfer over dismissal because transfers more efficiently advance "[the] expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962). Here, as most of the parties reside in Los Angeles, California, and most, if not all, of the alleged underlying events occurred in California, the Court finds that the interests of justice weigh in favor of transfer to the Central District of California.

### III.    CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Passes Defendants'

Motion to Dismiss, (ECF No. 12), is **GRANTED in part**. The Clerk of Court is directed to **TRANSFER** this case to the United States District Court for the Central District of California. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**. Upon transfer, the Clerk shall **CLOSE** this case in this District.

**DONE AND ORDERED** in Chambers in Miami, Florida this 2 day of September 2025.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Sanchez
All Counsel of Record